## No. 16,458.

SILER *v.* INVESTMENT SECURITIES COMPANY, LIMITED.

(244 P. [2d] 877)

Decided May 5, 1952.   Rehearing denied May 26, 1952.

Mr. A. X. Erickson, Mr. Don B. Oliver, for plaintiff in error.

Messrs. Phelps & Phelps, Mr. Edwin J. Wittelshofer, Mr. Robert L. Gee, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

We will hereinafter refer to the parties as they appeared in the trial court where defendant in error was plaintiff and plaintiff in error was defendant.

On October 14, 1946, plaintiff corporation filed its complaint alleging that it was the owner in fee simple and entitled to possession of twelve unimproved and unoccupied lots in the City and County of Denver; that defendant claimed some right, title, estate or interest in and to said property, adverse to plaintiff; and that his asserted interest in said land was without right. Judgment was sought quieting the title to said property in plaintiff, and adjudging that defendant had no lawful interest therein. Defendant by answer claimed title to said lots, based on a treasurer's deed.

For counterclaim defendant alleged that plaintiff "offered to quit claim and disclaim any of its purported interest" in the real estate in question for the consideration of $125.00, which offer was accepted by defendant; that defendant had done all things required of him under this agreement and was ready and willing to pay the sum of $125.00 in consideration for said conveyance, but that plaintiff refused to abide by said agreement. Defendant demanded judgment requiring conveyance of said property or damages in lieu thereof. Plaintiff denied the validity of the tax deed upon which defendant relied, and denied any agreement to quitclaim said property to defendant.

The treasurer's deed in question was issued to one

James Bradford upon a tax sale conducted November 26, 1930, for unpaid taxes for the year 1929. The date of the deed was January 9, 1942, and Bradford by quitclaim deed conveyed to defendant all rights arising under said tax deed.

Trial was to the court without a jury. When plaintiff rested its case counsel for defendant moved for dismissal of the action. This motion was denied. The findings of the trial court, contained, inter alia, the following: "And the Court doth further find that the Treasurer of the City and County of Denver failed and neglected to serve or cause to be served upon said Plaintiff notice of the application for Treasurer's Deed as is by statute provided, and that the Treasurer's Deed dated the Ninth day of January, 1942 and recorded in Book 5559 at Page 406 of the records in the Office of the County Clerk and Recorder in and for the City and County of Denver, State of Colorado, is null and void and of no force or effect. And the Court doth further find that no contract of sale and purchase of the property aforesaid enforceable at law was entered into between Plaintiff and Defendant, and that Defendant has no right, title or interest in or to said real estate by reason of the matters and things alleged in his Counter-claim or Cross-complaint."

Judgment was entered consistent with these findings and in accordance with the prayer of plaintiff's complaint. Defendant seeks reversal of the judgment by writ of error.

The statute, S.L. '37, page 1053, requires that the county treasurer shall perform certain duties when application is made for issuance of a tax deed by a purchaser of land sold for taxes. Among other things it becomes the duty of the treasurer to, " * * * serve or cause to be served, by personal service or by registered mail, * * * notice of such purchase * * * on the person in whose name the same [the land] was taxed * * * if upon diligent inquiry such person can be found in the county,

or, his residence without the county be known, and upon all persons having an interest or title of record in or to the said premises, if upon diligent inquiry the residence of such persons can be learned, * * *." It was for failure on the part of the treasurer to make "diligent inquiry" to find the plaintiff in whose name the property was taxed, in order that service of the statutory notice could be made upon it, that the tax deed was voided by the judgment of the trial court.

The notice was sent by registered mail addressed to plaintiff at 626 Foster Building in Denver. It was deposited in the mail on October 6th, 1941, was not delivered, and was returned to the treasurer. It was sent to said address—which had not been occupied by plaintiff corporation for many years—notwithstanding the fact that for the years 1939, 1940 and 1941 the identical property appeared on the "assessment roll and tax warrant" under the control of the treasurer in the name of plaintiff corporation at its correct address. The duly authorized tax agent of the City and County of Denver testified in part as follows:

"Q. * * * Is there an entry relative to the property in dispute in your 1940 assessment roll and tax warrant? A. Yes. Q. And in whose name is the property therein assessed? A. Investment Securities Company, Limited, care of F. R. Ross Investment Company, 510 U.S. National Bank Building, Denver. Q. And would you refer to the assessment roll and tax warrant for the year 1941? Is the property in dispute listed? A. Yes, sir; lots 4 to 16. Q. Block 2, Romona? A. Yes, sir. Q. And to whom are they assessed—at what address? A. Investment Securities Company, care of F. R. Ross Investment Company, 510 U.S. National Bank Building, Denver. Q. I call your attention to at least six other parcels of property on the same page which are also assessed to the Investment Securities Company. Will you state what is the address of that Company as given on that page? A. It is

the same as the address I have just given you. Q. 410 U.S. National Bank Bldg.? A. 510."

Actually, statements of taxes due from plaintiff on the lots in question, and other property, were mailed to it at its correct address shortly prior to execution of the tax deed. For at least three years prior to the mailing of the notice to the address which had long been abandoned, records of the treasurer pertaining to the particular lots in dispute disclosed the correct address of plaintiff.

Counsel for defendant specify three points upon which they rely for reversal. In substance they are: That the motion for dismissal should have been granted because no prima facie case was made by plaintiff; that the court erred in rejecting the title of defendant based upon the tax deed; and the court erred in finding that defendant had no legal contract for a quitclaim deed from plaintiff.

Questions to Be Determined.

First: *In an action brought for the purpose of obtaining a complete adjudication of the rights of all parties thereto with respect to real property, under the provisions of Rule 105(a) R.C.P. Colo., was it necessary for plaintiff corporation to allege and prove that it had possession of the real estate in question?*

This question is answered in the negative. Counsel for defendant argue at length that proof of possession of the lots is an essential part of plaintiff's case, and since no such proof was offered by plaintiff, no prima facie case was made and the motion to dismiss should have been sustained. The opinion in the case of *Crandall v. Crandall,* 72 Colo. 100, 209 Pac. 814, and several other decisions of this court are cited in support of the assertion that proof of possession is an essential part of plaintiff's case in an action to quiet title. Every case cited by counsel for defendant upon this point was decided under the Code of Civil Procedure. The provision thereof—section 275, chapter 22—applicable to all the cases cited reads as follows: "An action may be brought *by any*

*person in possession,* by himself or his tenant, of real property, against any person who claims an estate therein adverse to him, for the purpose of determining such adverse claim, estate or interest." (Emphasis supplied.) This section of the code expressly provides that possession of the property in dispute is essential to the maintenance of an action to quiet title. No such requirement is found in the sections of the Rules of Civil Procedure, Rule 105, chapter XIV, which deal with actions concerning real estate and provide for a complete adjudication of the rights of the parties with respect thereto without regard to possession by any party to the action.

Under the allegations of plaintiff's complaint it clearly is entitled to relief under the provisions of Rule 105, supra, and possession of the property in controversy in either party is wholly immaterial. The trial court did not err in denying the motion to dismiss.

Second: *Where, upon application to a county treasurer for issuance of treasurer's deed, no "diligent inquiry" is made by said official to ascertain the address of the person in whose name the property sold for taxes was taxed, and where such "diligent inquiry" would have disclosed the correct address of said owner; where no notice of said application for tax deed was served upon or received by said owner because of failure of said official to make "diligent inquiry"; and where no statute of limitations is involved; will the treasurer's deed be voided upon complaint of the owner who thus was deprived of notice concerning the application for issuance of a treasurer's deed?*

This question is answered in the affirmative. We have set forth the undisputed evidence relating to the notice given in this case concerning the application for issuance of a treasurer's deed. This evidence fully justifies the conclusion that the treasurer did not make "diligent inquiry" to locate plaintiff. If "diligent inquiry" had been made, plaintiff unquestionably could have been served

with the notice required by statute. There must be a full compliance with the statutory requirements relating to notice of application for issuance of treasurer's deed, and if a noncompliance with any such statutory direction is shown, the treasurer's deed will be adjudged invalid. As we said in *Brown v. Davis,* 103 Colo. 110, 83 P. (2d) 326: "The requirements of the foregoing section [section 255, chapter 142, '35 C.S.A.] are jurisdictional." The trial court committed no error in holding the tax deed void.

■ Third: *Did the trial court err in finding that plaintiff and defendant did not enter into an enforceable contract of sale and purchase of the property?*

This question is answered in the negative. We reach this conclusion for two reasons. The contract, if any in fact was entered into, was oral. Defendant's evidence at best tended to show a telephone conversation between plaintiff's agent and an attorney who examined the title to said lots for the attorney who appeared for defendant in this case. Said conversation took place in July, 1946, two months before this suit was instituted. This attorney testified that plaintiff's agent orally agreed to accept $125.00 for execution by plaintiff of a quitclaim deed to the property; that the agent said, "If you will have your abstract brought down to show that [tax deed] and bring it over to me, plus your check for $125, plus the quitclaim deed, I will submit those papers to my attorney for his approval; and if we see we have the title to the property and that the tax deed has been issued, we will give you the quit-claim deed to that property." He testified that he prepared the quitclaim deed, drew his own check for $125.00 payable to plaintiff corporation, and delivered the same, together with the abstract, to plaintiff's agent. The papers thereafter were returned to him by plaintiff's attorney who advised that the tax deed was void. It is contended that because a quitclaim deed was prepared, an abstract of title delivered, and a check tendered in payment of the anticipated execution and delivery of the

quitclaim deed, there was a sufficient part performance of the oral contract to authorize enforcement thereof, notwithstanding the statute of frauds (section 8, chapter 71, '35 C.S.A.). This contention is altogether untenable. To sustain such a proposition would be to destroy the statute of frauds as applicable to agreements for the purchase and sale of real estate. The preparation of an abstract and a deed, coupled with the tender of a check for the purchase price of property allegedly sold under an oral agreement, cannot be considered such part performance as will prevent the operation of the statute of frauds.

██ It is true that where there is substantial part performance, which would result in injustice, courts of equity will enforce contracts which otherwise might be unenforceable under the statute of frauds. In *Mestas v. Martini*, 113 Colo. 108, 155 P. (2d) 161, will be found a discussion of the doctrine that part performance of an oral contract will, under certain circumstances, avoid application of the statute. From that opinion, and the cases therein cited, it is clear that the alleged contract in the instant case is unenforceable. Moreover, there is no showing or offer to show, that the alleged oral contract to purchase was entered into by defendant. No authority or agency of any kind is established under which the persons allegedly contracting with plaintiff's agent could obligate defendant. We cannot assume that an attorney had authority to make a contract to procure a quitclaim deed for another person because he enters his appearance in a case instituted two months after the parties entered into the alleged agreement to purchase. Nothing in the written instruments indicate that the alleged contract was entered into on behalf of defendant. The quitclaim deed tendered to plaintiff's agent did not name the defendant as grantee. The grantee named therein was "Don B. Oliver of the City and County of Denver and State of Colorado, of the second part."

In the complete absence of some further showing, it cannot successfully be contended that the trial court erred in finding that there was no enforceable contract under which plaintiff was obligated to sell the lots in question to defendant. Moreover, the evidence tending to establish an oral contract to sell to Oliver was disputed by plaintiff's agent, whose testimony was ample to support a finding that the parties never entered into any such oral agreement.

The judgment is affirmed.