No. 18,745.

CONCORD CORPORATION *v.* ROY ALBERT HUFF, ET AL.

(355 P. [2d] 73)

Decided September 6, 1960.

Mr. WILLIAM T. ECKHART, for plaintiff in error.

Mr. GEORGE M. GIBSON, for defendants in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE parties appear here in the same order as in the trial court. We refer to them as plaintiff and defendants.

On March 2, 1956, plaintiff commenced this action alleging that it was the owner of and in possession of certain contiguous lands and lots, comprising some twenty-five acres, now a part of Colorado Springs, and that the defendants claim some title or interest in the property. It asks that the rights of all parties to the action in said property be adjudicated and put to rest.

Named as defendants were some two hundred persons, corporations or other legal entities. None of the defendants, except those appearing here, appeared in the trial court.

The defendants, by answer, denied plaintiff's alleged ownership and possession, and by way of counterclaim alleged ownership in themselves predicated on their open, notorious, adverse, exclusive and continuous possession since 1921. Defendants claimed no paper title. They too prayed that the rights of all parties be adjudicated and title quieted in defendants.

Following trial to the court extensive findings of fact

and conclusions of law were made and a decree quieting plaintiff's title to all of the lands, except that portion claimed by defendants consisting of about ten acres, was entered.

Plaintiff is here by writ of error seeking reversal.

From the record and plaintiff's brief it is very apparent that plaintiff relies heavily on defendants' alleged lack of title and alleged lack of right to question plaintiff's title. In view of this situation we deem it advisable to first discuss and evaluate defendants' claimed title.

The evidence presented shows without contradiction that from 1921 until September 1955 — thirty-four years — the defendants were using the lands in question, to the exclusion of all others, as a cow pasture, that the lands were under a fence which was adequate to turn livestock and was at all times maintained by defendants. The defendants' actual possession was open, notorious, exclusive and continuous. The trial court's finding is:

"4. That during the year 1921 the defendants Roy Albert Huff, Lee Evert Huff, and Roy Albert Huff and Lee Evert Huff, doing business as Huff Brothers Dairy, enclosed the hereinafter described tract of land located in the County of El Paso and State of Colorado, namely: [here appears a description of the ten acres] and took possession thereof; that the possession of the defendants Huff of said land was adverse possession against the entire world; that such possession was open, notorious, adverse and actual possession of said property; that the said defendants Huff continued such possession of said property up to the commencement of this action, and that during all of said time the said defendants Huff claimed the property as their own against the entire world, and adversely to the other defendants herein, and to the plaintiff; the court further finds that the plaintiff did not oust the defendant from the possession of said property prior to the commencement of this action."

Such possession for eighteen years became "conclusive

evidence of absolute ownership" of the property as provided by C.R.S. '53, 118-7-1:

"No person shall commence or maintain an action for the recovery of the title or possession, or to enforce or establish any right or interest, of or to real property, or make an entry thereon, unless commenced within eighteen years after the right to bring such action or make such entry shall first have accrued, or within eighteen years after he or those from, by or under whom he claims, have been seized or possessed of the premises. Eighteen years adverse possession of any land shall be conclusive evidence of absolute ownership."

Plaintiff does not seriously question the correctness of this finding of *fact*, but points out that in 1932 and 1937 three treasurer's tax deeds were issued by the County Treasurer of El Paso County to the Board of County Commissioners of said county. Said deeds were issued for non-payment of previous years' taxes and, defendants contend, served to convey title to said property to the county, thereby tolling the running of the limitation statute above set forth, said deeds creating a new title in the county against which the statute does not run; that these conveyances were made prior to the lapse of eighteen years after entry of the property by defendants.

The trial judge found and concluded as a matter of law that each of the three tax deeds was void for the reason that the tax certificates on which the deeds were issued were void because (1) the publisher's affidavit showing publication of the delinquent tax list and notice of sale did not meet the requirements of C.R.S. '53, 109-1-3 and 5, and (2) the deeds were issued by the treasurer on his own volition without any request from the Board of County Commissioners, as provided by C.R.S. '53, 137-10-42.

We concur with the holding of the trial judge that these deeds were void and did not convey any title to the county or in any manner affect defendants' possessory rights, which shortly thereafter ripened into "ab-

solute ownership." The question of the validity of these deeds will be discussed in dealing with the question of plaintiff's alleged title. This argument might well prevail if the county acquired any title. Void deeds not only do not convey title, but they are wholly ineffective to interrupt one's right to possession of the properties therein described.

■ Plaintiff further contends that the record shows that it had taken possession of the property in September of 1955; that it was then fortified with conveyances stemming from the treasurer's deeds, and that the defendants, not in possession at the time of the commencement of this action, are by C.R.S. '53, 118-7-11, barred from attacking the validity of the treasurer's deeds. Complete answer to this contention is in subsection 4 of the above statute which exempts from the operation of the statute persons who have been deprived of their possession within two years of the commencement of the action:

"118-7-11. * * *

"(d) Where the party who brings the action to question, attack or set aside the validity of such documents, or his predecessor, shall have been deprived of possession within two years of the commencement of said action."

Defendants come squarely within the exception and may, as they did, attack the validity of the treasurer's deeds.

Turning now to plaintiff's claims of ownership, we find the same predicated on (1) paper title evidenced by a deed from persons who had purchased the interests of the county acquired through the treasurer's deeds; (2) possessory rights originating in September 1955, and (3) color of title, possession since September 1955, and payment of taxes for the years 1946 to 1956, inclusive.

As heretofore stated, the trial judge properly held the treasurer's deeds to be void.

In *Siler v. Investment Co.,* 125 Colo. 438, 244 P. (2d)

877, this court, in passing on the validity of a treasurer's deed, said:

" * * * There must be a full compliance with the statutory requirements relating to notice of application for issuance of treasurer's deed, and if a noncompliance with any such statutory direction is shown, the treasurer's deed will be adjudged *invalid*. As we said in *Brown v. Davis,* 103 Colo. 110, 83 P. (2d) 326: 'The requirements of the foregoing section [section 255, chapter 142, '35 C.S.A.] are jurisdictional.' The trial court committed no error in holding the tax deed *void.*" (Emphasis supplied.)

In *Gilbreath v. Doe,* 24 Colo. App. 205, 132 Pac. 1146, there was a failure to comply with the statute concerning the publisher's affidavit. In deciding the matter on that failure the court said:

"Another fatal defect in the tax sale proceedings renders the deed *void* * * *." (Emphasis supplied.)

See, also, *Bogue v. Miles,* 107 Colo. 320, 111 P. (2d) 1055, and *Taylor v. Lutin,* 106 Colo. 170, 102 P. (2d) 484.

Plaintiff's evidence seeking to establish a disseisin of defendants during the period September 1955 to date of suit is very sketchy and inconclusive. At best it shows several trespasses by plaintiff. In addition, even if possessory rights were acquired by plaintiff for some six months at the most, they are of no avail against defendants, the statutory owners.

Erection of a TV antenna on a portion of the property could not be considered as a disseisin of a ten-acre cow pasture. The placing of a few improvements or structures is not a taking of possession thereof or a disseisin.

In *Mitchell v. Titus,* 33 Colo. 385, 80 Pac. 1042, it was held that going upon a lot, marking out a cellar thereon and driving stakes to outline it did not constitute an adverse possession of a vacant lot.

In *Pascoe v. Green,* 18 Colo. 326, 32 Pac. 824, it was held that the building of a rough board shanty upon one

of four contiguous lots and the placing of posts around a portion of the lots did not constitute a taking of possession of the lots.

In *Nelson v. Van Cleve,* 143 Colo. 117, 352 P. (2d) 269, we held that: " * * * installation of concrete footings, I beams and a septic tank * * * " on a vacant lot did not constitute proof of an allegation of possession.

Nor did plaintiff having its engineers go upon the property and make a topography map, marking points with red flags, constitute a taking of possession or an ejectment of defendants. Such acts would not substantially, if at all, interfere with defendants' use of the property as grazing land. Trespassers who go upon lands for a special purpose, hunting, fishing, camping, surveying, etc., do not thereby acquire possession. Possession means a general holding and occupancy, complete dominion over the property to the exclusion of others.

In *Phillippi v. Leet,* 19 Colo. 246, 35 Pac. 540, it was held that one who had gone upon lands of another, made a survey and placed stone monuments at two corners of the tract, had not acquired such possession as was then required of a plaintiff seeking to quiet title, and did not constitute a disseisin.

A similar situation exists with reference to the claimed possession based on some grading done on the premises. The record does not clearly show what portion of the grading done by plaintiff was on the disputed tract. The preponderance of evidence indicates that the grading was done after the commencement of this action — the contract for the grading bears date March 12, 1956, ten days after the commencement of this action on March 2, 1956.

Likewise, payment of taxes by one not the owner does not, standing alone, give the person so paying any interest in the property on which the taxes are paid.

Finding no error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE SUTTON, MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE not participating.