**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAMES A. WINGERS,

      Plaintiff/Counterclaim-
Defendant/Appellant,

v.

JENNIE M. SWEET; LOU D.
SWEET, and any and all unknown
persons who claim any interest in the
subject matter of this action,

      Defendants/
Crossclaim-Defendants,

and

UNITED STATES OF AMERICA,

      Defendant/Crossclaim-Plaintiff/
Counterclaim-Plaintiff/
Appellee,

and

SECRETARY OF AGRICULTURE;
UNITED STATES FOREST
SERVICE,

      Defendants-Appellees.

No. 04-1329
(D.C. No. 00-MW-2404-(OES))
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

Plaintiff and counterclaim defendant, James A. Wingers, appeals from an order of a United Magistrate Judge[1] granting summary judgment in favor of defendants the United States of America, the Secretary of Agriculture, and the United States Forest Service on his claims for record title and adverse possession, and in favor of the United States on its counterclaim for record title. We affirm.

Background

The property at issue in this case is an approximate six-acre patented mining claim known as the Snowflake Lode Mining Claim (Snowflake). It is located in the White River National Forest, about two miles south of Aspen, in Pitkin County, Colorado.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] The parties consented to the exercise of jurisdiction by a magistrate judge.

The undisputed, material facts concerning the Snowflake began more than one hundred years ago with the recording of a location certificate in 1881, and the issuance of a patent in 1887. By 1889, M.J. Orr had acquired the Snowflake by several mesne conveyances; however in 1892, it was acquired by Jennie M. Sweet via a treasurer's deed. Property taxes were last paid on the Snowflake in 1911 by Lou D. Sweet, and on December 21, 1912, the Snowflake was offered at a tax sale by the Pitkin County Treasurer. There were no bidders at the tax sale, and the Snowflake was struck off to Pitkin County through a treasurer's certificate of purchase.

In February 1949, the Pitkin County Treasurer issued a Notice of Purchase of Real Estate at Tax Sale and of Application for Issuance of Treasurer's Deed for the Snowflake, a copy of which was sent to Walden Sweet by registered mail. Mr. Sweet signed for the notice on March 3, 1949. When there was no response, a treasurer's deed issued to the Pitkin County Board of County Commissioners, which was recorded on April 18, 1949.[2]

In July 1976, Pitkin County passed and recorded a resolution concerning numerous mining claims that it had obtained by treasurer's deeds, including the Snowflake. The resolution recognized that the claims were located within the

---

[2]     Pitkin County continued to own the Snowflake until 1994 when it was conveyed to the United States, although it leased the mineral rights to a company pursuant to a lease that expired in 1994. Nonetheless, from 1949 through 1994, no property taxes were assessed because county-owned property is tax exempt. Colo. Rev. Stat. § 39-3-105.

White River National Forest and stated that they were "useful and necessary for present public open space and parks and recreation." Aplt. App., Vol. IV at 326-27. And in July 1988, based on numerous "wild deeds"[3] being filed on county-owned mining claims, the County recorded a Public Notice in the county records asserting its ownership of numerous properties, including the Snowflake. To further demonstrate its ownership, the County hired personnel to locate and inspect various claims, including the Snowflake, and had the property posted with signs: "Pitkin County Public Park And Open Space Welcome Please Pack Your Trash." Aplt. App., Vol. V at 419.

Plaintiff's chains of title began with two "wild deeds" recorded in 1975 and 1979, and conveyed to him in 1978 and 1980.

In May 1994, Congress enacted the Exchange Act, Public Law No. 103-255, 108 Stat. 684 (1994), pursuant to which Pitkin County agreed to exchange certain lands, including the Snowflake, for a 230-acre parcel owned by the United States. As part of the exchange, the County conveyed the Snowflake to the United States by a quit claim deed, which was recorded on August 17, 1994. The Snowflake then became part of the White River National Forest. Plaintiff filed his quiet title action against the United States in November 2000.

---

[3]    A "wild deed" is defined as "[a] recorded deed that is not in the chain of title . . . ." *Black's Law Dictionary* 446 (8th ed. 2004).

In October 2002, the Pitkin County Treasurer issued a corrected treasurer's deed for the Snowflake, which explained that the 1912 tax sale was held late due to "[l]ack of office help and time for the preparation and publication of the notice in the newspaper." Aplt. App., Vol. V at 455. To cure any cloud on the title, Pitkin County executed another quit claim deed to the United States on January 22, 2003.

## Standard of Review

The Quiet Title Act permits lawsuits against the federal government "to adjudicate a disputed title to real property in which the United States claims an interest . . ." 28 U.S.C. § 2409a(a). Although the parties' respective claims arise under a federal statute, questions involving real property rights are determined by state law unless federal law requires a different result. *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378-81 (1977); *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986); *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1389 n. 4 (10th Cir. 1980).

We review the district court's grant of summary judgment de novo, viewing the evidence and drawing the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1175 (10th Cir. 2001). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1175. When applying Colorado

law, the district court should ascertain and apply the state law to reach the result the Colorado Supreme Court would reach if faced with the same question. *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). We also review the district court's application of state law de novo. *Id.*

Record Title

Under Colorado law, "a plaintiff in a quiet title action . . . bears the burden of establishing title in the property superior to that of the defendant . . . [and] the plaintiff must rely on the strength of his own title rather than on the weakness in or lack of title in [the] defendant[]." *Hutson v. Agric. Ditch & Reservoir Co.*, 723 P.2d 736, 738 (Colo. 1986) (internal quotation omitted).

Plaintiff's theory is that the 1949 treasurer's deed issued to Pitkin County is void because the 1912 tax sale was untimely. However, he lacks standing to challenge any deficiencies because neither he nor his predecessors in interest had any interest in the Snowflake in 1949 when the treasurer's deed was issued to the County. *See Turkey Creek, LLC v. Rosiania*, 953 P.2d 1306, 1314 (Colo. App. 1998) (holding that a party lacks standing to challenge the validity of a deed issued by a county treasurer in the absence of actual injury to a legally protected interest).

Plaintiff next argues that the correction deed is void because Pitkin County had no authority to request the deed. We agree with the district court's conclusion that this argument lacks merit under Colorado law. Under nearly

-6-

identical factual circumstances, the Colorado Supreme Court held that where a treasurer's deed contains a defect, the treasurer has not discharged his duty to convey and is not only authorized, but required to issue a correction deed. *White Cap Mining Co. v. Resurrection Mining Co.*, 174 P.2d 727, 735 (Colo. 1946).

Here, the undisputed material facts established that the United States, which can trace its chain of title back to the location certificate recorded in 1881, has superior record title to the Snowflake over plaintiff. His chain of title is traced back to "wild deeds" recorded in the mid 1970's and conveyed to him in 1978 and 1980.

## Adverse Possession

Although the Quiet Title Act permits lawsuits against the federal government to adjudicate disputed title to real property in which the United States claims an interest, it contains the prohibition that "[n]othing in this section shall be construed to permit suits against the United States based upon adverse possession." 28 U.S.C. § 2409a(n). Plaintiff argues that the prohibition does not apply if he or his predecessors in interest acquired title to the Snowflake by adverse possession *before* the United States first claimed an interest[4] in the

---

[4]    Plaintiff argues alternatively that the prohibition does not apply until the United States obtains good title to the property. This is contrary to our prior cases interpreting the Quiet Title Act and the requirement that the United States need only claim an interest in the property to trigger the Act's limitation provision. *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980); *Stubbs v. United States*, 620 F.2d 775, 781 (10th Cir. 1980).

property in 1994. The district court disagreed, and held that the clear and unambiguous language of the statute barred his claims for adverse possession, regardless of when the claim may have accrued.

Assuming for argument that a plaintiff may base a quiet title claim on a claim of adverse possession that has ripened into title prior to the United States claiming an interest in the property, there are no facts to support such a claim in this case. Admittedly, the district court did not reach this conclusion in its decision because it found that plaintiff's adverse possession claims were barred. Nonetheless, we may "affirm a grant of summary judgment on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result." *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (quotation marks and citation omitted).

Colo. Rev. Stat. § 38-41-101(1) provides for adverse possession where a plaintiff and/or his predecessors in interest have been in possession of property for more than eighteen years. The possession must be: (1) actual; (2) adverse; (3) hostile; (4) under claim of right; (5) exclusive; and (6) uninterrupted. *See generally Salazar v. Terry*, 911 P.2d 1086, 1089, n. 4 (Colo. 1996).

Plaintiff claims that his adverse possession of the Snowflake began in 1974 when he staked the corners of the property and cut a small trail to a flat spot. Assuming the truth of these allegations, we disagree that this activity constitutes

actual possession under Colorado law. *See generally Smith v. Hayden*, 772 P.2d 47, 52 (Colo. 1989) (holding that actual possession requires some "visible means, which gives notice of exclusion from the property to the true owner or to the public and of the [adverse claimant's] dominion over it . . . ."); *Concord v. Huff*, 355 P.2d 73, 76 (Colo. 1960) (holding that placing of markers on property does not constitute actual possession).

Beginning in 1977, plaintiff claims to have built an eight-by-eight wood platform, made a corral from dead aspen trees in the mid-1980s, and stored a friend's old car on the property since the early 1990s. He considered the open space signs posted by Pitkin County "warts," and removed them. Aplt. Opening Br. at 42. Assuming for argument that these activities could be considered actual possession, which we doubt, it does not matter because they could not have ripened into title until 1995, which is later than August 1994, when the United States first claimed an interest in the Snowflake.

To avoid the consequences of Colo. Rev. Stat. § 38-41-101(2), which provides that a party cannot adversely possess against a county, plaintiff argues that Pitkin County never owned the Snowflake until 2002, when the correction deed was issued. We do not need to decide this issue because plaintiff could not have adversely possessed against *anyone* until 1995, which is one year later than when the United States first claimed its interest.

Likewise, plaintiff's claim of title to the Snowflake pursuant to Colorado's seven-year adverse possession statute also fails. Colo. Rev. Stat. § 38-41-108 provides that a person "in actual possession of lands . . . under claim and color of title, made in good faith . . . [and] who for seven successive years . . . pays all taxes legally assessed on such lands . . . [is] . . . the legal owner . . . ." Our consideration of this claim begins and ends with the admitted fact that plaintiff "did not pay any taxes" on the Snowflake. Aplt. Opening Br. at 47.

## Conclusion

Based on the foregoing undisputed material facts, the district court correctly found that the United States was entitled to summary judgment on plaintiff's claims for record title and adverse possession. The court also correctly entered summary judgment in favor of the United States on its counterclaim for record title to the Snowflake. The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Circuit Judge