Opinion by JUDGE HAWTHORNE
¶ 1 In this land dispute concerning the validity of two treasurer's deeds, defendant, Bradley Klingsheim, appeals the declaratory judgment setting aside the deeds as void. We affirm.
I. Facts and Procedural History
¶ 2 The following facts are undisputed. Plaintiffs, Carl A. Cordell and Wanda M. Cordell, were record owners of a tract of land in La Plata County (Tract 1). Carl Cordell was also the record owner of an adjoining tract (Tract 2). The Cordells failed to pay the taxes owed on the properties, and Brenda Heller purchased the tax liens on the properties. Heller assigned the tax liens to Klingsheim, who later requested deeds to the two properties from the La Plata County Treasurer.[1]
¶ 3 The Treasurer published in the local newspaper a notice, for each property, of the tax lien purchase and deed request. The Treasurer also sent to Carl and Wanda, by certified mail, a copy of the published Tract 1 notice, and sent to Carl, by certified mail, a *631 copy of the published Tract 2 notice. Both notices were addressed to 705 N. Vine in Farmington, New Mexico, which was the address listed for both Carl and Wanda Cordell in the county's tax roll.
¶ 4 The Treasurer received the return receipts from the certified mailings. The receipts indicated that the notices were delivered to Cleo Cordell at 703 N. Vine, and the box for "agent" was not checked. After receiving the return receipts, the Treasurer did not recheck Carl's or Wanda's addresses in the tax rolls, nor did he check for alternative addresses in the county assessor's office or the county clerk and recorder's office. The Treasurer made no further efforts to notify the Cordells of the tax lien purchase, the deed request, or their redemption rights. Rather, the Treasurer issued to Klingsheim deeds to the two Cordell properties.
¶ 5 Upon learning of the treasurer's deeds, the Cordells filed the present action seeking, as relevant here, a declaratory judgment that the treasurer's deeds are void. After a trial on the merits, the court concluded that the Treasurer had failed to comply with the statutory requirements for issuing treasurer's deeds because, among other things, the Treasurer had not undertaken diligent inquiry in attempting to determine Carl's and Wanda's residences. The court thus entered judgment declaring the treasurer's deeds void and setting them aside.
II. Validity of Treasurer's Deed
¶ 6 Klingsheim contends that the trial court erred in concluding that the Treasurer had failed to undertake diligent inquiry in attempting to determine Carl's and Wanda's residences. We disagree.
¶ 7 Section 39-11-128, C.R.S.2014, sets forth the requirements that a county treasurer must satisfy before issuing a deed to a purchaser or assignee of a tax lien on land. As relevant here, it provides that a treasurer shall serve or cause to be served, by personal service or by either registered or certified mail, a notice of the tax lien purchase "upon all persons having an interest or title of record in or to the [subject property] if, upon diligent inquiry, the residence of such persons can be determined." § 39-11-128(1)(a).[2]
¶ 8 This requirement, like the other requirements listed in section 39-11-128, is jurisdictional, and anything less than full compliance voids a treasurer's deed. See Siler v. Inv. Sec. Co., 125 Colo. 438, 443-44, 244 P.2d 877, 880 (1952) ; Meyer v. Haskett, 251 P.3d 1287, 1292 (Colo.App.2010) ; Wittemyer v. Cole, 689 P.2d 720, 721-22 (Colo.App.1984).
¶ 9 When, as here, the facts relevant to whether a treasurer undertook "diligent inquiry" in attempting to determine a record landowner's residence are undisputed, we resolve the question as a matter of law. See Siler, 125 Colo. at 441-44, 244 P.2d at 879-880 (determining, based on undisputed evidence, that treasurer had not undertaken diligent inquiry to locate plaintiff); Schmidt v. Langel, 874 P.2d 447, 449 (Colo.App.1993) (because the material facts were undisputed, appellate court resolved, as a matter of law, whether treasurer had undertaken diligent inquiry in attempting to locate defendant); see also Parkison v. Burley, 667 P.2d 780, 782 (Colo.App.1983) (resolving, as a matter of law, whether treasurer had undertaken diligent inquiry in attempting to locate plaintiffs; noting that appellate court was not bound by trial court's determination because facts were stipulated).
¶ 10 " 'Diligent' " inquiry means a " 'steady, earnest, attentive, and energetic application and effort' " in the inquiry. See Schmidt, 874 P.2d at 450 (quoting Parkison, 667 P.2d at 782 ). This comports with section 39-11-128's purpose of affording record owners an opportunity to redeem their property before it is lost through a treasurer's deed. Parkison, 667 P.2d at 782 ; see also Winter Park Devil's Thumb Inv. Co. v. BMS P'ship, 926 P.2d 1253, 1255 (Colo.1996) ("Because redemption is favored over forfeiture, redemption statutes are liberally construed in *632 favor of the party seeking redemption."). In resolving whether a treasurer undertook "diligent inquiry," the focus is on the treasurer's conduct and not on the property owner's conduct. See Parkison, 667 P.2d at 782.
¶ 11 The Treasurer attempted to serve notice of the tax lien purchases by sending a copy of the published Tract 1 notice to Carl and Wanda, and by sending a copy of the published Tract 2 notice to Carl. He sent both notices, by certified mail, to 705 N. Vine, Farmington, New Mexico, which was the address listed for Carl and Wanda in the county tax rolls. The return receipts from the mailings, however, indicated that the notices were not delivered to Carl or Wanda, nor were they delivered to 705 N. Vine. Rather, the receipts indicated that the notices were delivered to Cleo Cordell at 703 N. Vine, and the box for "agent" on the return receipts had not been checked.
¶ 12 Despite this, the Treasurer conducted no further inquiry to determine if 705 N. Vine was indeed the Cordells' residence. He did not recheck Carl's or Wanda's addresses in the tax rolls, nor did he check for alternative addresses with the county assessor's office or the county clerk and recorder's office. Rather, his inquiry consisted solely of checking the tax rolls once before mailing each notice, with no further inquiry upon receiving the return receipts.
¶ 13 Such inaction after learning that the notices were not delivered to Carl and Wanda, nor to a person claiming to be their agent, does not constitute "diligent inquiry" in attempting to determine their residences. Indeed, when a return receipt indicates that a notice was not actually delivered to the intended recipient or intended address, or even to a person claiming to be the intended recipient's agent, then a treasurer's reliance on a single pre-mailing check of the tax rolls is not a "steady, earnest, attentive, and energetic application and effort" in attempting to determine their residences. See Schmidt, 874 P.2d at 450. Rather, when a treasurer is put on notice that a notice of a tax lien purchase was not delivered to the landowner as intended, the treasurer "is required to re-examine the county records for any alternative addresses." Id . at 451. Here, the Treasurer failed to undertake such examination and thus failed to undertake the statutorily-required "diligent inquiry."[3] See Bald Eagle Mining & Refin. Co. v. Brunton, 165 Colo. 28, 30-32, 437 P.2d 59, 60-61 (1968) (treasurer had not conducted diligent inquiry in attempting to ascertain landowner's residence when, after receiving return receipt indicating that the person who signed for the mailing was not the intended recipient, the treasurer had not "sought and obtained verification from other sources"); Parkison, 667 P.2d at 781-82 (treasurer failed to conduct a diligent inquiry in attempting to determine landowners' residence when the mailed notices were returned to the treasurer as undeliverable, and the treasurer made no further attempts to locate the record owners); Siler, 125 Colo. at 441-44, 244 P.2d at 879-80 (same).
¶ 14 Furthermore, "statutory notice requirements pertaining to tax proceedings must be interpreted so as to comply with due process under the United States and Colorado Constitutions." Schmidt, 874 P.2d at 450-51. Re-examining county records after the Treasurer learned that the notices had not been delivered to the Cordells, or even a person claiming to be their agent, would have comported with constitutional due process concerns. See, e.g., id. (treasurer's rechecking county records for landowner's address after learning that notice was not delivered to landowner complies with constitutional due process concerns).[4]
¶ 15 The dissent, however, cites several cases to support its position that a treasurer need not conduct further inquiry if subsequently *633 learned facts indicate that such an inquiry would not have disclosed an alternative current address. We do not read those cases as permitting such an ex post facto, harmless-error type of analysis when reviewing whether a county treasurer fulfilled his or her duty of diligent inquiry under section 39-11-128. In particular, we disagree with the dissent's reading of Schmidt as holding that a treasurer's duty of diligent inquiry only requires "efforts that would prove 'fruitful.' " Schmidt did not state, let alone hold, that only efforts that would prove fruitful are required. Indeed, for at least four reasons, we read Schmidt as supporting the opposite conclusion.
¶ 16 First, the division affirmed that "[n]oncompliance with the notice requirement of the statute will serve to void a treasurer's deed." Id . at 450 (emphasis added). Second, the division stated, without qualification, that when a notice is returned as undeliverable, a treasurer "is required to re-examine the county records for any alternative addresses." Id . at 451. Third, the division reiterated that, " '[w] hen the issue is the validity of a treasurer's deed, the proper focus is on the diligence of the treasurer, not the conduct of [the owner].' " Id . at 451-52 (quoting Parkison, 667 P.2d at 782 ) (emphasis added). Fourth, the division noted that a landowner's "failure to keep the county apprised of a correct address does not relieve the county treasurer of [his or] her burden to make diligent inquiry." Id. at 451. We read these statements as requiring treasurers to conduct diligent inquiry-including reexamining county records if a notice is returned as not delivered-regardless of whether the treasurer learns after issuing the deed that such inquiry would not have been "fruitful."
¶ 17 In fact, Schmidt only mentioned the word fruitful once, in rejecting the defendant's argument that, when a treasurer learns that a notice was not delivered to the landowner, the treasurer is required not only to re-examine county records, but also to "contact directory assistance, defendant's co-beneficiary, and defendant's attorney." Id . at 449. The division concluded that the treasurer had satisfied her duty of diligent inquiry by "re-examin[ing] the county records for any alternative addresses." Id . at 451. The division noted that some jurisdictions require inquiry beyond county records, but concluded that such standards "provide little guidance as to when the inquiry must cease and little assurance that the efforts required would be fruitful within the limits of practicality." Id . at 451. Thus, the division was not implying that a treasurer is relieved of his or her duty of diligent inquiry if subsequently learned facts indicate that such efforts would not have been fruitful. To the contrary, the division was affirming that, when a notice is returned as not delivered, a county treasurer must re-examine the county records for an alternative address, but need not examine information outside the county records when there is little assurance that such efforts would be fruitful. See id .
¶ 18 This conclusion is further supported by statements the division made in rejecting the defendant's specific argument that the treasurer's duty of diligent inquiry required her to contact the defendant's co-beneficiary to try to find the defendant's current address. The division noted that the treasurer "had no way of knowing ... from the information contained in the county records" that the co-beneficiary was "personally acquainted with [the defendant] and could have provided information as to her whereabouts." Id . at 451. Thus, the division concluded that, "when, as here, notice by mail has been sent but returned as undeliverable, if a diligent search of county records would uncover no alternative address" a treasurer need not "follow up on information which she has no reason to believe would result in the discovery of a correct address." Id . at 452. So, again, the division was reiterating that, when a notice is returned as not delivered, a treasurer must only re-examine the county records and need not follow up on information outside of county records if such records provide no reason to believe that such information would result in the discovery of a correct address.[5] See id . at 451-52. The *634 division was not contradicting its prior conclusion that a county treasurer "is required to re-examine the county records for any alternative addresses" should the notice be returned as not delivered. Id . at 451.
¶ 19 Harmless error review is also not appropriate because our supreme court has made clear that a treasurer's "full compliance" with section 39-11-128's requirements is jurisdictional. Concord Corp. v. Huff, 144 Colo. 72, 75-76, 355 P.2d 73, 77 (1960) ; Siler, 125 Colo. at 444, 244 P.2d at 880 ; Walter v. Harrison, 101 Colo. 14, 16, 70 P.2d 335, 335 (1937). Thus, because the Treasurer's conduct demonstrates that he had failed to undertake diligent inquiry in attempting to determine the Cordells' residences, he lacked jurisdiction to issue the deeds. See, e.g., Concord Corp., 144 Colo. at 75-76, 355 P.2d at 77. We therefore do not review for harmlessness for this additional reason.
III. Conclusion
¶ 20 Because the trial court correctly determined that the Treasurer had not fully complied with section 39-11-128's requirements, the trial court properly set aside the treasurer's deeds as void. See Siler, 125 Colo. at 443-44, 244 P.2d at 880. We therefore need not address Klingsheim's additional contention concerning the Treasurer's failure to mail separate notices to each record owner.
¶ 21 The judgment is affirmed.
JUDGE ASHBY concurs.
JUDGE J. JONES dissents.

For simplicity, we refer to the Treasurer and his staff collectively as the "Treasurer."

In their original complaint, the Cordells cited to section 39-11-128, C.R.S.2014 generally and included a single reference to section 39-11-128(1)(b). In their subsequent briefs to the trial court, they argued that the Treasurer had failed to comply with both subsections (1)(a) and (1)(b). In Klingsheim's trial briefs, he refuted the Cordells' arguments under both subsections.

To be clear, we do not hold that "diligent inquiry" requires a county treasurer to look outside county records to find a landowner's address.

We need not, and do not, decide whether the "diligent inquiry" required by section 39-11-128 is required to comply with constitutional due process. We simply note that re-examining county records after learning that the notices had not been delivered to the intended recipient would comport with constitutional due process concerns. See Schmidt v. Langel, 874 P.2d 447, 450-51 (Colo.App.1993).

Schmidt was not presented with a situation in which a treasurer's re-examination of county records revealed a reason to believe that the landowner's correct address could be discovered by following up on information outside of the county records. Thus, Schmidt did not resolve whether, to fulfill his or her duty of diligent inquiry, a treasurer must follow up on such information in those circumstances. See id . at 451-52.