Opinion by JUDGE RICHMAN
¶ 1 Plaintiff, Wells Fargo Financial Colorado, Inc., appeals the district court's summary judgment in favor of defendants regarding a tax deed issued by defendant Pueblo County Treasurer Del Olivas (the Treasurer) to defendant Bob Housman. Defendant John Moran currently holds the deed to the property. We reverse the summary judgment and remand to the district court to conduct further proceedings in accordance with this opinion.
I. Background
¶ 2 When property taxes are unpaid, the county in which the property is located may sell a tax lien by public auction to recover the taxes owed on the property. §§ 39-11-101 to - 110, C.R.S. 2017. Upon the sale of a tax lien, the county treasurer must prepare a tax lien certificate of purchase to record the sale and any subsequent taxes paid. § 39-11-117, C.R.S. 2017. Three years after the tax lien is purchased, a lawful holder of the certificate may present it to the treasurer, who, after providing notice to the owner of the property, any occupant, and any interested parties of record, shall issue a tax deed on the property to the certificate holder if the tax lien remains unredeemed. §§ 39-11-120, 39-11-128, C.R.S. 2017.
¶ 3 The following facts regarding this case are undisputed. Buyers purchased a house in *1286 Pueblo in 2004. On June 24 of that year, buyers signed (1) a deed of trust in favor of "Wells Fargo Financial Colorado, Inc." (WFFC), a Colorado company with an address of 1721 South Pueblo Blvd., Pueblo, Colorado, to secure a mortgage loan in the amount of $267,000.52; and (2) an open-end deed of trust to "Wells Fargo Financial Bank" (WFFB), with an address of P.O. Box 5943, Sioux Falls, South Dakota, to secure a line of credit with a maximum amount of $20,000. The open-end deed of trust referenced the WFFC deed of trust as a prior encumbrance on the property. Both deeds of trust were recorded in the Pueblo County Clerk and Recorder's Office on June 30, 2004, and assigned sequential document numbers.
¶ 4 Beginning in 2008, buyers failed to pay both the monthly mortgage installments to WFFC and the property taxes on the house.[1] WFFC apparently did not maintain an escrow account on the mortgage loan, but it paid the 2008 taxes in September 2009. WFFC did not pay the taxes thereafter. Housman paid the 2009 taxes on October 20, 2010, when the Treasurer sold a tax lien on the house by public auction.
¶ 5 Housman also paid taxes on the property for tax years 2010, 2011, and 2012. In 2013, Housman applied for a tax deed. In early January 2014, the Treasurer took steps to notify all parties with an interest in the property, as required by section 39-11-128, of an impending issuance of a tax deed and a right to redeem by May 28, 2014.
¶ 6 The Treasurer acquired a title report and, on January 2 and 3, 2014, sent notices by certified mail to the buyers, the public trustee of Pueblo County, and to WFFB and WFFC at the addresses on the two deeds of trust referenced above. The Treasurer also had a notice physically posted on the property and advertised for three consecutive weeks in a local newspaper, the Pueblo Chieftain. The notice sent to plaintiff WFFC at 1721 South Pueblo Blvd., Pueblo, CO 81005 was returned to the Treasurer on January 13, 2014, marked "undeliverable as addressed ... unable to forward." During discovery, WFFC reported that it had ceased to occupy that address "on or about October 31, 2010." The notice sent to WFFB was not returned to the Treasurer.
¶ 7 Although the notice to WFFC was returned, the Treasurer believed that he had provided the notice required by law because one Wells Fargo entity had received the notice. He testified that he believed that WFFB and WFFC were "the same entity" because they operated under the "same trade name," and he assumed that WFFB, which received a notice, would notify the proper office if necessary. The Treasurer himself did not inquire further as to the correct address for WFFC and took no steps to issue a further notice to WFFC. He could not say whether any staff in his office had rechecked the records for an alternative address.
¶ 8 The Treasurer issued Housman a tax deed on the house on May 28, 2014. Housman sold the property to Moran a few weeks later, and Housman continued to hold a deed of trust on the property. On December 30, 2014, WFFC requested related records from the Treasurer. And on May 20, 2015, WFFC filed a complaint seeking to void the tax deed to Housman, the special warranty deed from Housman to Moran, and the deed of trust held by Housman.
II. Procedural History
¶ 9 WFFC claimed that (1) upon return of the original notice as undeliverable, the Treasurer failed to perform his statutory duty of diligent inquiry to find an alternative address and notify it of an impending tax sale; and (2) it was deprived of its constitutional due process right to notice. WFFC requested declaratory relief and moved for summary judgment on those grounds, arguing that the Treasurer's duty requires him to search county records of other properties to find a correct address. Housman and Moran responded and cross-moved for summary judgment, disputing that the Treasurer was required to search the county records of other properties and asserting that the WFFC's *1287 complaint should be barred by the doctrine of laches.
¶ 10 The district court denied both motions, finding that
• "a search of any county records associated with the property at issue in this case would not have yielded an alternative address for [WFFC]";
• "a search of all properties in the county to determine if [WFFC] held an interest in other unrelated properties for an alternative address is not required"; and
• "the doctrine of laches is not applicable or appropriate to the facts of this case."
¶ 11 Housman and Moran later moved for summary judgment, this time arguing that because the correct address for WFFC did not appear in the county records for the subject property, the Treasurer's failure to follow up was of no effect and could not invalidate the tax deed. WFFC responded that the Treasurer's failure to do anything when "there was more that could reasonably be done" was a violation of the statute and a deprivation of due process, and required summary judgment in favor of WFFC, relying in part on Jones v. Flowers , 547 U.S. 220, 238, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).
¶ 12 The district court granted summary judgment in favor of the defendants. The court found, as it had in its prior order, that because it was undisputed that "a search of any county records associated with the property at issue in this case would not have yielded an alternative address for [WFFC], [the Treasurer's] failure to conduct such a search was of no effect" and did not prejudice WFFC. Therefore, the court concluded, the tax deed issued to Housman was valid.
¶ 13 On appeal, WFFC contends that the district court's order granting summary judgment in favor of defendants was erroneous. Defendants contend that the court correctly found that the tax deed was valid, but they cross-appeal, arguing that the court erroneously denied their motion for summary judgment on the basis of the doctrine of laches.
¶ 14 We conclude that the tax deed is voidable under the applicable state law because, as a matter of law, the Treasurer did not exercise reasonable diligence in seeking an alternative address for WFFC. We reverse the summary judgment in favor of defendants and remand the case to the district court for further proceedings on defendants' assertion that laches bars WFFC's claims. If the court concludes that laches does not bar WFFC's claims, it shall address the request for declaratory relief contained in the prayer for relief in WCCF's amended complaint. If recovery of the land conveyed by the tax deed is effected by this suit, the court shall consider whether section 39-12-101, C.R.S. 2017, applies.
III. Validity of Tax Deed
A. Standard of Review
¶ 15 We review de novo an order granting summary judgment, applying the same legal principles as the trial court. Lewis v. Taylor , 2017 COA 13, ¶ 7, ---P.3d ---- (cert. granted Oct. 2, 2017). Summary judgment is appropriate only if the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c) ; Amos v. Aspen Alps 123, LLC , 2012 CO 46, ¶ 13, 280 P.3d 1256.
¶ 16 Here, neither party contends that there exists a genuine issue of material fact.[2] Whether a county treasurer fully complied with the statutory requirement of diligent inquiry is usually a question for the trier of fact. See Siddoway v. Ainge , 189 Colo. 173, 176, 538 P.2d 110, 113 (1975). However, the only finding of fact made by the district court which is pertinent to our review is that after the notice sent to WFFC was returned, "[the Treasurer] took no action to find another address." The other finding by the district court that "a search of any *1288 county records associated with the property at issue in this case would not have yielded an alternative address" for WFFC is not controlling because, as discussed below, it misapprehends the applicable law.
¶ 17 We presume a tax deed to be valid. See Bald Eagle Mining & Ref. Co. v. Brunton , 165 Colo. 28, 32, 437 P.2d 59, 61 (1968). And a plaintiff attacking the validity of a tax deed on the ground of defective notice of a pending tax sale has the burden of presenting evidence of the defect. Grusing v. Parke , 120 Colo. 555, 559, 212 P.2d 102, 104 (1949). But when notice is defective because it was given without the diligent inquiry required by law, the tax deed is voidable. See Lake Canal Reservoir Co. v. Beethe , 227 P.3d 882, 890 (Colo. 2010) ; Sandstrom v. Solen , 2016 COA 29, ¶¶ 24, 25, 370 P.3d 669.
¶ 18 We conclude that the questions to be answered in this case are primarily questions of law, which we review de novo. See Hicks v. Londre , 125 P.3d 452, 455 (Colo. 2005).
¶ 19 We perceive two related questions of law to be addressed in resolving this case. First, did the county treasurer's duty of further inquiry arise under the circumstances presented here? And second, if a duty of further inquiry arose, did the treasurer exercise reasonable diligence under these circumstances?
B. Applicable Law
¶ 20 Section 39-11-128(1) provides, as relevant here, that before a tax deed may be issued,
(a) The treasurer shall serve or cause to be served, by personal service or by either registered or certified mail, a notice of such purchase ... on the person in whose name the same was taxed or specially assessed ..., and upon all persons having an interest or title of record in or to the same if, upon diligent inquiry , the residence of such persons can be determined....
(b) In all cases or instances where the valuation for assessment of the property is five hundred dollars or more, the treasurer shall publish such notice [as designated herein], and he shall send by registered or certified mail a copy of such notice to each person not found to be served whose address is known or can be determined upon diligent inquiry .
(Emphasis added.)
¶ 21 The purpose of section 39-11-128(1) is to prohibit the issuance of a tax deed "absent reasonably diligent efforts to notify persons with an interest in the property, especially those with a right to redeem." Klingsheim v. Cordell , 2016 CO 18, ¶ 20, 379 P.3d 270. A division of this court has noted that a dictionary definition of diligent-"steady, earnest, attentive, and energetic application and effort" is consistent with the legislative purpose of section 39-11-128. Parkison v. Burley , 667 P.2d 780, 782 (Colo. App. 1983) (citation omitted).
¶ 22 The supreme court in Klingsheim , ¶ 2, recognized that the duty of diligent inquiry arises before the notice is sent and applies to a treasurer's initial diligence in inquiring as to all interested parties and their correct addresses. A further duty of diligent inquiry may arise if the facts known to the treasurer show that the interested party could not have received notice of the pending tax deed. Id. A treasurer's duty of diligent inquiry "does not require the treasurer to ensure actual notice; rather, reasonable diligence to ensure notice is all that is required." Id. at ¶ 21.
¶ 23 Colorado appellate courts have consistently found that a further duty of diligent inquiry arises when notice to a taxpayer is returned as undelivered or undeliverable. See Parkison , 667 P.2d at 782 ; Siler v. Inv. Sec. Co. , 125 Colo. 438, 244 P.2d 877, 879 (1952) ; Schmidt v. Langel , 874 P.2d 447, 451 (Colo. App. 1993). When, as in these cases, the circumstances make clear that the taxpayer could not have received the notice, "a treasurer must re-examine his or her records to determine whether those records reveal the correct address." Klingsheim , ¶ 26.
C. Analysis
1. Diligent Inquiry
¶ 24 WFFC does not appear to dispute that the Treasurer fulfilled his initial duty of diligent inquiry when he ordered a title report and sent notice, by certified mail, *1289 to the addresses of record for all interested parties. Rather, WFFC asserts that when the Treasurer "took no action" upon receiving the return notice from WFFC marked undeliverable, he failed to perform his duty of further inquiry. Further diligent inquiry, after an initial notice has been sent, is required "only when the facts known to the treasurer show that the taxpayer could not have received notice of the pending tax sale." Id. at ¶ 22.
¶ 25 The Treasurer testified that he believed that notice had been mailed to one entity at two separate addresses and that one of the notices had been delivered. But we conclude that a reasonably diligent treasurer should know that secured parties on two different deeds of trust, securing two different loan amounts, with two different (though similar) names and two different addresses, may not be so closely affiliated that notice to one could be assumed to effect notice to the other. Indeed, WFFB's open-end deed of trust refers to WFFC's separate interest in the property. We conclude that these circumstances should have made clear to the Treasurer that WFFC could not have received notice of the tax deed sale, triggering the Treasurer's duty of further diligent inquiry as a matter of law.
2. Reasonable Diligence
¶ 26 The question remains: Once a treasurer knows, or should know, that a notice of tax sale has not been received by an interested party, what must a treasurer do to satisfy his or her duty of reasonable diligence?
¶ 27 The district court interpreted existing case law to require that the Treasurer need only examine the records "associated with the property at issue in this case," and defendants contend that this is the correct interpretation.
¶ 28 WFFC contends that the Treasurer should have searched the county database, and that if the Treasurer had performed a search of the county records for all properties naming it as grantor or grantee and looked at the documents recorded for those properties, he would have easily found an alternative address by clicking on eight computer links. Moreover, WFFC asserts, and defendants do not dispute, that no less than three alternative addresses could have been found by looking at the documents associated with the first twenty entries, with the principal address cited in its complaint appearing on the nineteenth record.
¶ 29 Clearly, at a minimum, a re-examination of the records related to the subject property is required. See Parkison , 667 P.2d at 782 (holding that the treasurer failed to conduct a diligent inquiry where re-examination of the deeds for the subject property would have revealed a correct address); Siler , 125 Colo. at 441, 244 P.2d at 879 (finding no diligent inquiry where the "assessment roll and tax warrant" for the subject property contained a correct address to notify the taxpayer). But in this case, the Treasurer did not do even that.
¶ 30 Colorado law does not clearly delineate the precise scope of the records a treasurer must search in order to fulfill his or her duty of further diligent inquiry after notice to an entity is returned. One division of this court held in Schmidt that diligent inquiry requires re-examination of "the county records" to check the address for accuracy and look for an alternative address. 874 P.2d at 450. In that case, the county records examined by the treasurer included the treasurer's records, the county tax assessor's records, and the records of the county clerk and recorder. Id. at 449. Another division held that "diligent inquiry required, at a minimum, ... reexamination of the assessor's records ." Parkison , 667 P.2d at 782 (emphasis added). And the supreme court held in Klingsheim that diligent inquiry required a treasurer to re-examine "his or her records." ¶ 26.
¶ 31 Conversely, we have not found any Colorado case which expressly requires a county treasurer to search the records of unrelated properties in the county after receiving an undelivered notice. We are not persuaded by WFFC's argument that Wittemyer v. Cole , 689 P.2d 720 (Colo. App. 1984), is such a case. Although Wittemyer suggests that before issuing a tax deed for a common area of a subdivision, property records *1290 other than those of the common area should have been checked, the other record referred to was the subdivision declaration which listed the owners of the subdivision lots and whose ownership was closely connected to the subject property. Id. Moreover, Wittemyer addressed the diligence required before an initial notice is sent, not the duty of further inquiry at issue here. See Klingsheim , ¶ 2.
¶ 32 While these cases do not address the precise issue presented here, we conclude that, collectively, they set forth the requirement summarized in Klingsheim : While "a treasurer's duty of diligent inquiry does not require the treasurer to ensure actual notice ... reasonable diligence to ensure notice" is required. Id. at ¶ 21. And they set forth a requirement that a treasurer must use reasonable diligence to look for an alternative address when a notice of issuance of a pending tax deed is returned as undeliverable.
¶ 33 "Reasonable diligence" is commonly understood to mean "[a] fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue." Black's Law Dictionary 553 (10th ed. 2014). In the circumstances presented here, we conclude that a treasurer of ordinary prudence exercising a fair degree of diligence should re-examine the records of the subject property and, in the event that an alternative address does not emerge, the treasurer should conduct a reasonable search of the county's available electronic records to find an alternative address.[3] The Treasurer in this case testified that, after the lawsuit was filed, his staff conducted a search of the county automation system, and they were able to locate the alternative addresses suggested by WFFC.
¶ 34 A full and complete search of the county records may not be practicable, and, if so, is not required. See Schmidt , 874 P.2d at 451 ("[M]ore expansive standards of diligence provide little guidance as to when the inquiry must cease and little assurance that the efforts required would be fruitful or within the limits of practicality."). However, some amount of further effort is required to protect the legal rights of interested parties. Because the reasonable diligence standard includes consideration of the circumstances, the records required to be searched by a reasonably diligent treasurer may vary with a treasurer's ability to search county records. Accordingly, a trial court will typically resolve this question as a matter of fact.
¶ 35 However, because the treasurer in this case "took no action" upon learning that notice to WFFC was not received, we conclude that the Treasurer failed, as a matter of law, to perform his statutory duty to exercise reasonable diligence. Having reached this conclusion, we need not decide whether the actions of the Treasurer deprived WFFC of it rights to due process.
¶ 36 Finally, we are not persuaded by defendants' position that because WFFC failed to exercise available remedies beginning in 2008, it should not be entitled to recover the property upon issuance of a tax deed for which it did not receive notice. "When the issue is the validity of a [tax] deed, the proper focus is on the diligence of the treasurer, not the conduct of plaintiffs." Parkison , 667 P.2d at 782.
IV. Laches and Redemption
¶ 37 The equitable defense of laches may serve to shorten the period in which a party may bring a claim when the plaintiff has full knowledge of the facts and unreasonably delays the assertion of an available remedy causing "intervening reliance by and prejudice to another." Hickerson v. Vessels , 2014 CO 2, ¶ 12, 316 P.3d 620 (citation omitted).
*1291 ¶ 38 The trial court denied defendants' motion for summary judgment on the issue of laches, but because that order did not put an end to the litigation, it is not a final and appealable order. See Glennon Heights, Inc. v. Central Bank & Trust , 658 P.2d 872, 875 (Colo. 1983). Accordingly, we do not review defendants' cross-appeal.
¶ 39 Nonetheless, because we are reversing the trial court's order granting summary judgment against WFFC and remanding the case for further proceedings on its claim for declaratory relief, we conclude that defendants must be given the opportunity to prove their affirmative defense of laches on remand. In addition, we note that if the tax deed to defendants is voided, and recovery of the land is effected by this suit, the provisions of section 39-12-101 may become applicable.
V. Conclusion
¶ 40 The judgment in favor of defendants is reversed. We remand the case to the district court to conduct further proceedings on the affirmative defense of laches. If the court determines that laches does not bar WFFC's claims for declaratory relief, it shall address the request for declaratory relief contained in the prayer for relief in WFFC's amended complaint.
JUDGE TAUBMAN and JUDGE FURMAN concur.

The status of the line of credit and related open-end deed of trust do not appear in the appellate record, and WFFB is not a party to this case.

Defendants Housman and Moran, in their response to WFFC's motion for summary judgment, contended that "[t]here is a genuine issue of material fact as to whether unrelated property records are required to be searched when a notice is returned undelivered," but this is an issue of law.

When, in 1946, our supreme court held that county treasurers were not required to consult the records of the Colorado Secretary of State before issuing a tax deed, convenient electronic access to those records was not available. See White Cap Mining Co. v.Resurrection Mining Co. , 115 Colo. 396, 409, 174 P.2d 727, 733 (1946) ("To constitute diligent inquiry upon the part of the county treasurer, he was not obliged to go to the records in the office of the secretary of state...."). But we note that for Colorado corporations such as WFFC, a search of the business database on the website of the Colorado Secretary of State could quickly reveal a current address.