## No. 14,200.

### OLSON ET AL. *v.* TAX SERVICE CORPORATION.
(76 P. [2d] 1113)

Decided February 21, 1938. Rehearing denied March 14, 1938.

Mr. HERBERT E. MANN, for plaintiffs in error.

Mr. CLARENCE L. IRELAND, Mr. R. H. BLACKMAN, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

DEFENDANT in error brought action to quiet title to two tracts of land in Weld county, one containing 10 acres and the other 50. Ownership was founded on two treasurer's deeds issued after the statutory time had elapsed following the sale for the 1929 and 1930 taxes, respectively. Plaintiff in error Ernest W. Olson was the owner of a life estate, while plaintiffs in error Floyd H. Olson, Oscar W. Olson and Clarence R. Olson were remaindermen. The trial court found the issues in favor of, and quieted title in, the defendant in error, holding the two tax deeds valid. Reference will be made to the parties as they appeared in the trial court.

Defendants, in their assignments of error, attack the two tax deeds on the following grounds: 1. Improper assessment. 2. Invalidity of the tax sale certificates.

3. More property conveyed than assessed. 4. Tax notices were not mailed to all owners. 5. Deeds invalid by reason of unconstitutional levies.

The ranch, of which the property here involved is a part, originally consisted of 120 acres owned by Peter Olson, who died in 1924 leaving a will in which Ernest W. Olson was given a life estate in this 120 acres, with the proviso: "But I direct that during his lifetime, that he pay the taxes thereon * * *." Peter Olson died domiciled in Nebraska where his will was admitted to probate, and on January 16, 1925, a petition to probate it was filed in Weld county, Colorado, where the statutory procedure was there followed in its admission. There was a decree of final settlement, in which defendants were named among the distributees. The premises were leased to one Gust Anderson who has been a tenant on the property ever since.

As suggested, the ranch originally comprised 120 acres, but the 60 acres upon which the buildings were located, and on which Gust Anderson lived and is living, previously had been transferred under a tax deed and is not involved here. The ten-acre tract joined the 60 acres on the north, while the fifty-acre tract lay to the south, separated by a road.

1. Defendants contend that the property was not properly assessed, because assessed in the wrong name and not as a unit. The property was assessed as follows: "Olson, Peter, Est." and since the name and address of the life tenant in said estate were known, the "owner" was sufficiently described.

It is not disputed that Ernest W. Olson, the life tenant, had regularly received assessment blanks on the property, but had consistently refused to fill out and return them, yet, all the time acknowledging that he was the owner and trying to get more time to pay the taxes. Certainly he was not misled by the assessment blanks. The record does not disclose when the three tracts were first segregated for assessment, but there was a road

78

between two of them, and while the segregation of the ten-acre tract appears to be arbitrary, the assessor may have had a valid reason for doing it in the first instance, and the fact that it was farmed as a part of the middle 60 acres later does not nullify the assessment. *Reed v. Zaitz,* 100 Colo. 87, 65 P. (2d) 711.

 2. Defendants contend that the certificates of purchase were void, because rate of interest was left blank, and the sale was not made for cash. There was no interest figure inserted because there were no bids at the sale for a less rate of interest than the statutory rate. There was no showing of any impropriety of the bidding in this respect. The statute (chapter 142, section 241, '35 C. S. A. (C. L. §7416) provides that the property "shall be sold to the person who shall * * * offer to accept any lower rate or rates of interest upon the amount so paid than is required by law to be paid in order to redeem land sold * * *." One of the certificates did not show what the bid on interest was, that is, the phrase "rate of . . . per cent" was not crossed out. While this may be slightly irregular, it does not violate the statute when the statutory interest rate appears on the face of the certificate, the presumption being that such rate was bid.

As to the sale not being made for cash, it is sufficient to say that plaintiff, who made a number of purchases, left its check for more than enough to cover all of its purchases. If the check had not been good there might be a question here, but there was no indication that the delayed delivery of the certificate of purchase was due to the payment by check, but, as was shown, it was a physical impossibility to prepare and deliver all of the certificates of purchase on the day of the sale. The defendants might be in a different position on these two last matters if they were seeking to redeem, but they made no tender of taxes at any time, and consequently have no reason to complain on these points.

3. Defendants urge that because certificate No. 90 covers only 47 acres and the deed attempts to convey 50 acres, the deed is void. The explanation, of course, is obvious to anyone who had any occasion to inquire. The three acres difference had been dedicated for a public road. Even if we should hold that this amounted to a discrepancy which would void the deed, which we do not, plaintiff could, and still can, have that corrected should the occasion arise.

4. This brings us to the question of the sending of notices of application for the tax deeds. As to the certificate of compliance, we held in *Walter v. Harrison,* 101 Colo. 14, 70 P. (2d) 335, that the treasurer's certificate of what he had done in connection with its issuance was prima facie evidence of all of the prerequisites necessary to the deed's execution and delivery. He does not have to make a separate certificate to be placed in his files. As in the Walter-Harrison case, the plaintiff here did not have to rely on the deed alone, but the evidence introduced shows conclusively that notices of the application for the tax deed were sent to all those entitled to receive them, and diligent inquiry was made to ascertain residences of all persons having an interest or title of record. It should be borne in mind that the treasurer in using due diligence need not do all that a lawyer would do in seeking to locate lost heirs or an absconding debtor as counsel suggests.

Let us see what the treasurer did when he received the application for the tax deed to the fifty-acre tract. In said application, plaintiff requested the treasurer to give notice as the law required and to "please see that registered notices go to the following people, as well as any others of record:

"Gust Anderson, Rural Route, Greeley, Colorado. Ernest W. Olson, Unity, Saskatchewan, Canada. Floyd H. Olson, Hordville, Nebraska. Oscar W. Olson, Hordville, Nebraska. Clarence R. Olson, Hordville, Nebraska.

Edna P. Olson, Hordville, Nebraska. Arthur H. Olson, Hordville, Nebraska.

"Yours very truly,
"The Tax Service Corporation
"By R. B. Klein, Vice President."

On receipt of the application, the treasurer went to the Weld County Abstract & Investment Company and requested a list of people who had any interest in the land, and on July 23, 1934, the abstract company furnished him with a written memorandum of the names of such persons, showing the owner of the premises to be Peter Olson or Estate of Peter Olson, designating the file number in the county court of Weld county and listing the heirs as Ernest W. Olson, son, life estate in one-half of property (will shows life estate to Ernest W. Olson in whole of Weld county property), Floyd H., Oscar W., Clarence R., Edna P., and Arthur N. Olson, children of Ernest W. Olson, owners of one-half of property subsequent to death of Ernest W. Olson; Carl J. Olson, son, life estate in one-half of property; Carl E. Olson, only child of Carl J. Olson, and owner of one-half of property subsequent to death of Carl J. Olson. Treasurer then examined the assessment rolls in his office and the clerk's records for the name and address of the assessee, published notice the required number of times within the statutory period, and served printed copies by registered mail upon Weld county and Gust Anderson on July 28, 1934, and Estate of Peter Olson by E. W. Olson, and E. W. Olson, personally, on August 2, 1934, at Saskatchewan, Canada. Notices sent by registered mail to Arthur H. Olson, Edna P. Olson, Clarence R. Olson, Oscar W. Olson and Floyd H. Olson, all addressed to Hordville, Nebraska, and those sent to Carl J. Olson and Carl E. Olson addressed to Stromberg, were returned undelivered. (The registered return receipts and the original envelopes are in the record.)

On certificate No. 87 covering the ten-acre tract only three notices were mailed, i. e., to Peter Olson Estate,

% E. W. Olson, Unity, Saskatchewan, Canada, one to E. W. Olson, same address, and the third one to county of Weld, at Greeley, Colorado. On this certificate, none of the notices came back.

This shows without question that the treasurer did all the law required of him, and more, in regard to giving due notice.

■ We held in *Dormer v. Walker,* 101 Colo. 20, 23, 69 P. (2d) 1049, that "as a matter of law, even where the instrument creating the life estate is silent as to these items [payment of taxes, repairs, etc.], it is the duty of the owner of a life estate, who is entitled to receive the rents, issues and profits therefrom, *to keep paid all current taxes and assessments* which, if left unpaid, may result in a lien effective against the interests subsequent to the estate for life." (Italics are ours.) In this case the will specifically placed that burden on E. W. Olson. For his failure to assume that burden the Dormer-Walker case indicates remedies for the remaindermen.

There are certain other small items regarding taxing of certain costs upon which defendants might have been heard if they were here offering to redeem, but which do not materially affect the procedure, and, therefore, are not considered.

■ 5. There remains only the question of the alleged unconstitutionality of certain levies of which we cannot see the materiality. Defendants contend that the land involved carries a disproportionate share of certain school levies, and that the discrimination voids the assessment, and hence the tax sale. They say "the sum and substance of the constitutional objections is that local school districts are thus deprived of control of their respective districts, and that State School funds are used to maintain a minimum standard of school teacher pay and a minimum number of those employed." We think the trial court properly excluded any evidence along this

line on the ground of immateriality, and the manner in which it was sought to be introduced.

In conclusion, we may say that the plaintiff rightfully invoked section 79, chapter 142, '35 C. S. A. (C. L. §7256) which reads as follows: "No failure of the owner to return his property or any part thereof for assessment, or to procure such property to be assessed, or to procure the errors in the assessment to be corrected, and no irregularity, error or omission in the assessment of any property or in the levy of any tax, shall in any manner affect the legality of any tax levied upon such property, nor any right or title to such property which would have accrued to any party claiming or holding the same under or by virtue of any sale of the treasurer or any deed executed by the treasurer as provided by law, had the assessment of the property been in all respects regular."

Much as we sympathize with the small farm and home owner, we cannot excuse him from the elementary duties of citizenship which the above section imposes upon him. The record here leaves no doubt as to these claimants knowing that no taxes had been paid on the property for years, and while public officials must do their duty and comply with the law, the impossible should not be asked of them, nor their offices be made missing heir bureaus.

The record discloses no serious departure from the law on the part of the public officials involved. The defendants failed in their attack on the tax deeds.

We have not overlooked the late case of *Tintic Undine Mining Co. v. Ercanbrack* (Utah), 74 P. (2d) 1184, relied upon by counsel for defendants, and while we agree with the general principles announced by the court in that case, a casual reading of the opinion discloses that the facts were entirely different from those in the case at bar, consequently, the conclusions reached can be of no assistance to us here.

The judgment, accordingly, is affirmed.

Mr. Justice Bouck concurs in the conclusion.