IN THE MATTER OF THE APPLICATION OF THE CITY OF NEWARK, A MUNICIPAL CORPORATION, FOR THE PAYMENT OF CERTAIN MONEY INTO THE SUPERIOR COURT OF NEW JERSEY, CHANCERY DIVISION, AS PAYMENT FOR THE TAKING FOR PUBLIC USE OF LANDS OF COMMUNIPAW CENTRAL LAND COMPANY, A CORPORATION.

Superior Court of New Jersey
Chancery Division

Decided May 20, 1953.

126

*Messrs. Riker, Emery & Danzig (Mr. Theodore McC. Marsh* appearing), attorneys for Communipaw Central Land Company.

*Messrs. R. E. & A. D. Watson (Mr. A. Dudley Watson* appearing), attorneys for the City of Newark and The Port of New York Authority.

*Mr. William Osgood Morgan,* attorney for Elsie Ritz Reeves and others, being the heirs, legatees and devisees of John Henry Frecking.

STEIN, J. S. C. This suit arises upon application of the Communipaw Central Land Company for withdrawal of certain moneys deposited in this court as the result of condemnation proceedings affecting certain lands in the City of Newark.

The Communipaw Central Land Company claims the entire fund as owner of the premises; the City of Newark and the Port of New York Authority, its lessee, claim three-fourteenths of the fund and the heirs of Henry Frecking claim one-half of the fund.

The pertinent facts are contained in a written stipulation of facts filed herein from which it appears that Leander Stone and Henry Frecking acquired title to the premises involved by deed from Julia Kuhn and George Kuhn, her husband, dated July 1, 1874 and recorded on July 2, 1874 in Book T 17 of deeds for Essex County on page 309 etc.

On May 28, 1906 the comptroller of the City of Newark sold the premises in question to Florence E. Cahill by virtue of the provisions of *L.* 1886, *c.* 112, commonly known as the Martin Act, and issued to her a tax sale certificate therefor. Proof of service by publication of notice of the sale and of notice to redeem said land from the sale was filed in the Newark City Clerk's office. This proof consists of an affidavit dated December 11, 1906 made by Edwin L. Rall, a clerk in the office of the *Newark Evening News,* stating that the notice a copy of which is annexed to the affidavit was published on October 30, 1906 and for six weeks successively thereafter. Also on file is an affidavit of inquiry made by John Francis Cahill as agent of Florence E. Cahill. On August 12, 1907 the comptroller of the City of Newark executed and delivered to Florence E. Cahill a deed for said premises which was recorded on September 25, 1907 in Book V 42 of Deeds for Essex County, on page 62 etc. On September 24, 1907 Florence E. Cahill and John Francis Cahill,

her husband, conveyed said premises to Communipaw Central Land Company by deed recorded on September 25, 1907 in Book W 42 of Deeds for Essex County, on page 121 etc.

Leander Stone died on March 14, 1895 a resident of the City, County and State of New York, leaving a will probated in the New York County Surrogate's office on September 28, 1895 in and by which he gave his wife a life estate in all of his property and the remainder to seven named children. The interests of three of these children were subsequently acquired by the City of Newark and it is upon such interest or title that the City and its lessee, the Port of New York Authority, base their claim. The interests of the four remaining children are not represented herein.

John Henry Frecking died on February 23, 1901, a resident of the City, County and State of New York, leaving a will probated in the New York County Surrogate's office in which he made five certain bequests a charge upon his real estate and gave the residue of his estate to four named children. All of these interests are represented herein and claim one-half of the fund.

The claim of the Communipaw Central Land Company is based on a continuous record ownership of the property since 1907. The answering defendants claim that the title of said Communipaw Central Land Company is defective because it is based on an invalid sale by the City of Newark, and that the right to redeem was not properly foreclosed. They contend that the inquiry made by the purchaser to ascertain the address of the owner was insufficient and did not comply with the requirements of the act. They summarize their objections as follows:

(a) The affidavit of John Francis Cahill does not state that he was the agent of Florence E. Cahill, the purchaser at the tax sale, for the purpose of making inquiry as to the owners of the property.

(b) The affidavit of John Francis Cahill does not state that he, personally, made the inquiry suggested by the reference to New York City contained in the deed to Stone and Frecking, by examining the New York City directories; nor does it state that he made inquiry for the residence or post-office address of the owners "wherever else in the city the same may be likely to be ascertained."

(c) Mr. Cahill's affidavit states that he "caused examination to be made * * * in directories of New York City," but that the names of Leander Stone and Henry Frecking could not be found therein; although the fact is that Leander Stone was listed in such directories from 1876 to 1894, and Henry Frecking was listed in directories from 1876 to 1900.

(d) It does not appear from Mr. Cahill's affidavit that a separate notice was mailed to Leander Stone but only, at best, that a notice was mailed to Leander Stone and Mrs. Leander Stone and Henry Frecking and Mrs. Henry Frecking.

The first objection is without merit. The affidavit of John Francis Cahill states "* * * that he is, for the purpose of serving the annexed notice the agent of Florence E. Cahill, the purchaser named in said notice." Being the agent to serve the notice necessarily carries with it the duty to ascertain upon whom and where the notice is to be served, and to make appropriate inquiry therefor.

The provisions of *L.* 1886, *c.* 112, § 6, *N. J. S. A., Acts Saved from Repeal,* 54:6–1(6) are:

"* * * in case such owner * * * is a nonresident, or his residence cannot, upon due inquiry, be ascertained, then the notice may be served by publishing the same in a newspaper printed and circulating in the city for a period of six weeks, at least once in each week, and depositing a copy of such notice, within twenty days after its first publication, in the post office of the city, inclosed in a wrapper, postpaid, directed to such owner, * * * at his or her last known post-office address, if the same can be ascertained; * * * inquiry for the residence or post-office address of such owner, * * * shall be made by the purchaser or his agent upon the lands purchased at the sale, if they are occupied, and wherever else in the city the same may be likely to be ascertained, and also by an examination of the record of the deed, * * * on account of which such notice is given; an affidavit shall be made by the purchaser or his agent setting forth the manner and particulars of the service, and, in case the same is made by publication, setting forth what inquiry was made to ascertain the residence and post-office address of such owner, mortgagee or other person having an interest in or lien upon said lands and premises, * * * provided, however, that if any estate in any of the said lands shall be held by any heir or devisee of a decedent whose estate appears of record in the county, * * * such heir, devisee, executor or administrator shall be entitled to redeem and to have notice as aforesaid before the purchaser shall be entitled to the possession of the lands; * * *."

A supplement to the act, *L*. 1892, *c*. 275, § 5, *N. J. S. A.*, *Acts Saved from Repeal*, 54:6–1(51) provides:

"That where notice is given by publication pursuant to the provisions of said act and supplements, or has heretofore been so given, to the person who by records in said county where the land sold lies, is or appears to be the owner or mortgagee of said lands or to have an interest therein, and the time for redemption has not yet elapsed and the purchaser or his agent, or his assignee or his agent, does not know of his own knowledge and cannot ascertain by inquiry made on the said lands whether such person is alive or deceased, and cannot ascertain his address by inquiry made on said lands, such person shall be conclusively presumed to be alive, and a notice published as required by said act and supplements, and mailed to the address, if given by the deed, mortgage or other recorded instrument, to him shall, after the time limited for the redemption of said lands, bar, bind, divest and foreclose of and from all equity of redemption, the right, title and interest in said lands of not only such person, if he shall have been alive at the time of the publication of such notice, together with all persons claiming through or under him, but shall also be conclusive against and bar, bind, divest and foreclose of and from all equity of redemption, all right, title and interest in said lands, of the heirs, devisees and personal representatives of such person or persons if at the time of such publication of said notice such person shall, in fact, have been dead; provided, the said purchaser or his agent, or his assignee or his agent make affidavit to the fact that he does not know and cannot ascertain by inquiry made in said lands whether such person is alive or dead at the time of the first publication of said notice; and could not then ascertain his address by inquiry made upon said lands, and does not know such address at the time of making said affidavit, and that the only address he can learn of such person is that disclosed by said record, if any is disclosed, and where no address is given publication alone shall be sufficient; and he shall also make proof of such mailing, if notice is mailed, which affidavits and proof shall be filed with the officer with whom the proofs are required to be filed, before the execution and delivery of the deed for said lands."

The provisions of the act require that the purchaser or his agent make inquiry (a) upon the lands purchased at the sale if they are occupied; (b) wherever else in the city the same may be likely to be ascertained, and (c) by an examination of the record of the deed on account of which such notice is given. As to (a), the affidavit under consideration states that the lands are vacant marsh lands and unimproved and unoccupied hence inquiry there would be unsuccessful.

As to (b), the only places in the City of Newark where the address of the owners might have then been ascertained would have been the office where deeds and mortgages are recorded, the surrogate's office where a record of death or a will or administration may have been found, and the tax office of the City of Newark where information as to the address of the owners of land may have been found. The stipulation of facts discloses that inquiry at any of these places would not have revealed the addresses of the owners of the land except for the record of the deed to them. With reference to (c), the affidavit states "that the only address this deponent can learn is the one given in the Deed by which the said Leander Stone and Henry Frecking acquired title to said land which deed is recorded in Book T. 17, page 309, and therein describes Leander Stone and Henry Frecking as of New York City, N. Y." To obtain this information it is obvious that an examination of the record of the deed was made by Cahill. This satisfies the requirement of the act. The affidavit is silent as to whether or not the affiant personally examined the deed, but this is not essential. The object of the inquiry was to obtain the address of the owners as shown by the deed and this was done.

The affidavit of Cahill states that he caused an examination to be made of the directories of New York City as to the addresses of Stone and Frecking and that he found no such persons listed therein. He does not state what years such examination included. At the hearing a witness for the defendants stated that he examined the New York City directories and found the name of Leander Stone listed from 1876 to and including 1894, and the name of Henry Frecking from 1876 to and including 1900. Because of this testimony the defendants argue that the inquiry by Cahill was inadequate, that Cahill's statement is untrue and fraudulent. With this I cannot agree. While it is true that had Cahill's inquiry extended to these prior years and to the records of the Surrogate of New York County his search would have proven fruitful, yet he was not legally required

to do so by the provisions of the act, which specifically provides where such inquiry shall be made.

Section 5 of the supplement to the act provides that where notice is given by publication to the person who by the record in the county where the land lies is the owner and the time for redemption has not elapsed and the purchaser or his agent does not know of his own knowledge and cannot ascertain by inquiry made on said lands whether such person is alive or dead and cannot ascertain his address by inquiry made on said lands, such person shall be conclusively presumed to be alive and a notice published as required and mailed to the address if given by the deed shall after the time limited for redemption bar and foreclose from all equity of redemption the title and interest in said lands, not only such person if he shall be alive at the time of publication together with all persons claiming under him, but shall also be conclusive against the heirs, devisees and personal representatives of such person if at the time of such publication such person shall in fact have been dead.

The affidavit of Cahill states that he did not know and could not ascertain by inquiry made on said lands whether the owners Stone and Frecking were alive or dead or by like inquiry ascertain their addresses. It also states that the lands were vacant meadow lands, unimproved and unoccupied, and the area surrounding said lands for approximately one mile were uninhabited. The affidavit states the address of the owners given in the deed was New York City and that the affiant mailed a copy of the notice to redeem to them at that address.

 It appears from the affidavit that the envelope containing the notice to redeem was directed to Leander Stone and Mrs. Leander Stone and to Henry Frecking and Mrs. Henry Frecking. Defendants say this was defective service relying upon *Henry C. McCandless, Inc.*, *v. Schaffer*, 103 *N. J. Eq.* 170 (*Ch.* 1928). In that case it was held that where a combination address is employed it is notice to the one to whom it is delivered to the exclusion of the other. In the instant case it is a reasonable probability that the letters

were never delivered, as it appears from the affidavit that letters previously mailed and similarly addressed were returned. However, here the notice was addressed and mailed to the owner which complies with the requirement of the act.

It is my conclusion that the purchaser at the sale complied with all of the requirements of the act relating to redemption and that the right to redeem by the owners and their heirs and devisees was effectively foreclosed. *Scott v. Jersey City,* 79 *N. J. L.* 166 (*Sup. Ct.* 1909). The Communipaw Central Land Company is entitled to the entire fund in court.