JUDGE J. JONES dissenting.
I respectfully dissent.
¶ 22 The majority holds that because the certified mail receipts for notices of applications for treasurer's deeds, addressed to Mr. and Mrs. Cordell at 705 N. Vine, Farmington, New Mexico 87401, were returned showing that the mailings had been signed for by Cleo Cordell at 703 N. Vine, the county treasurer was required, both as a matter of statute and due process, to recheck county records to determine whether the 705 N. Vine address was correct. Because that was not done, the majority further holds that the treasurer's deeds are void. I disagree with the majority for two reasons. First, the undisputed evidence shows that the notices were received by Mr. Cordell's agent for receiving mail. Therefore, as a matter of law, he was served with the notices. Second, even were I to deem Mr. Cordell not served, under the undisputed facts, the treasurer was required to do nothing more because any reasonable additional efforts would have been futile. I further reject Mrs. Cordell's argument that the notice was defective as to her because it was not sent to her in a separate envelope. Therefore, I would reverse the district court's judgment.
I. Facts
¶ 23 To properly understand and analyze the issues presented in this appeal, I believe it is necessary to provide a more complete recitation of the undisputed facts than that given by the majority.
¶ 24 Mr. Cordell bought the parcel the majority refers to as Tract 1 from his grandmother in 1974. He and his wife bought the adjoining parcel, Tract 2, from his aunt and uncle in 1993. Together, Tract 1 and Tract 2 comprise forty acres.
¶ 25 The Cordells paid the real property taxes on both parcels until 2005. For the tax years 2005-2009, they did not pay the real property taxes. At trial, Mr. Cordell admitted that he knew the taxes were due, but said he did not pay them because he "had a lot of things going on at that time." He did not deny having received the notices of taxes due or the statutorily required deficiency notices. See §§ 39-10-103(1)(a) (providing for annual notices of taxes due to be sent by the county treasurer by mail), 39-11-101, C.R.S.2014 (providing for notice of a tax deficiency to be sent by the treasurer to the taxpayer "by mail, at the [taxpayer's] last-known address"). Mr. Klingsheim received tax liens *635 for both tracts for 2005 through 2009, either through assignment or purchase.
¶ 26 For the years 2004-2009, the county assessor's records for both Tract 1 and Tract 2 showed the Cordells' address as "705 N. Vine, Farmington, NM 87401." Mr. Cordell testified at trial that he had provided that address to the assessor and the county clerk and recorder, he wanted his tax-related correspondence sent to that address, he expected the treasurer to send tax-related mail to that address, and it was fair for the treasurer to assume that he received mail at that address.
¶ 27 Mr. Cordell also testified that although he lived at 5207 Hubbard Road in Farmington, he wanted important mail (including the mail at issue here) to go to the 705 N. Vine address, where his mother lived. His mother had a "lockbox" for mail, to which only she had a key, so he could feel assured that important mail was not lost. (He had had problems with neighborhood children scattering his mail at the 5207 Hubbard Road address.)
¶ 28 Though Mr. Cordell said he also received mail at the 5207 Hubbard Road address, he admitted that he had received, through his mother, mail at the 705 N. Vine address since the late 1990s. His mother would set aside mail addressed to him, and from time to time he would go to her house to pick it up.[1]
¶ 29 At some point, apparently after this dispute arose, Mr. Cordell learned that his mother lived at 703 N. Vine, not 705 N. Vine. When his grandmother died, the property had been subdivided, and what was formerly one address at 705 N. Vine (where his mother lived) became three addresses, 703, 705, and 707 N. Vine. Despite this, Mr. Cordell testified that he had not had any problem receiving mail addressed to 705 N. Vine because the postal deliverers knew to put his mail in his mother's lockbox.
¶ 30 In 2009, Mr. Klingsheim requested that the county treasurer issue him treasurer's deeds for both tracts. See § 39-11-128(1), C.R.S.2014. The treasurer's office obtained "litigation guarantees" from a title insurance company identifying all persons (including the Cordells) to whom notices of the potential issuance of treasurer's deeds needed to be sent. The deputy county treasurer also looked at the assessor's records to determine the Cordells' address.
¶ 31 Based on the information obtained, the deputy county treasurer sent two notices of the applications for treasurer's deeds (which in substance complied with all statutory requirements), one to Mr. Cordell (for Tract 1) and one to Mr. and Mrs. Cordell (for Tract 2), by certified mail to "705 N. Vine, Farmington, NM 87401." See § 39-11-12 8(1)(a), (b) (requiring notice to property owners of potential issuance of treasurer's deeds by, among other authorized means, certified mail). The return receipts provided to the treasurer's office showed that the mailings had been received by "Cleo Cordell" at "703 N. Vine." The mailings themselves were not returned to the treasurer's office. The deputy county treasurer also advertised the notices in a local county newspaper the statutorily-required number of times for the statutorily-required period. See § 39-11-128(1)(b).
¶ 32 The Cordells did not exercise their rights to redeem the properties. The county treasurer's office issued treasurer's deeds for both tracts to Mr. Klingsheim on March 11, 2010. Both deeds certified the treasurer's compliance with all applicable statutes concerning the issuance of such deeds, as did separate documents placed in the assessor's files. See §§ 39-11-135 (prescribing the form of a treasurer's deed), 39-11-136(1)(i), C.R.S.2014 (such a deed is prima facie evidence that the deed was issued "in the manner required by law").
¶ 33 Some time later, after the period for redemption had expired, Mr. Cordell's mother gave Mr. Cordell "zero tax" notices she had received at her house addressed to him for the tracts. The zero tax notices apparently indicated that someone else now owned Tracts 1 and 2. Mr. Cordell then went to his mother's house, where he found the earlier notices of applications for treasurer's deeds *636 sent by certified mail for which she had signed.
¶ 34 The Cordells filed suit seeking to have them declared the owners of Tracts 1 and 2. They alleged that the treasurer had not complied with section 39-11-128(1)(b) because he had not made "diligent inquiry to ascertain [their] true address[es] ..., even though these addresses were contained in the records of the La Plata County Assessor."
¶ 35 Following a bench trial, the court ruled that when the return receipts came back showing that the notices had been signed for by someone other than the Cordells, the "diligent inquiry" requirement of section 39-11-128(1)(b) obligated the treasurer "to attempt to resolve the discrepancy." The court suggested that "[o]ne possible resolution was to attempt a second mailing to 705 N. Vine." Notably, the court did not rule that the treasurer was obligated to mail the notices to 5207 Hubbard Road, as the Cordells contended. Nonetheless, because "the county treasurer took no action," the court concluded that the treasurer had not been diligent, and voided the treasurer's deeds. The court also determined that, as to Mrs. Cordell, the treasurer's deed for Tract 2 was void because no "separate notice" had been sent to her.
II. Discussion
¶ 36 Section 39-11-128 governs the provision of notice of an application for a treasurer's deed to those having an interest in the property. As relevant in this case, subsection (1)(a) says that "[t] he treasurer shall serve or cause to be served, by personal service or by either registered or certified mail, a notice of such purchase" on persons having title to the property or in whose name the property was taxed "if, upon diligent inquiry," such persons can be found or their residences determined. Subsection (1)(b) similarly provides that notice shall be sent "by registered or certified mail" to "each person not found to be served whose address is known or can be determined upon diligent inquiry" when notice is given by publication. (Notice by publication is required under subsection (1)(b) whenever "the valuation for assessment of the property is five hundred dollars or more.")[2]
¶ 37 If the treasurer does not comply fully with section 39-11-128 before issuing a treasurer's deed, a subsequently issued treasurer's deed is void. Schmidt v. Langel, 874 P.2d 447, 450 (Colo.App.1993). But a treasurer's deed is prima facie proof that the treasurer complied fully with the statute. Bald Eagle Mining & Refin. Co. v. Brunton, 165 Colo. 28, 31, 437 P.2d 59, 61 (1968) ; Walter v. Harrison, 101 Colo. 14, 16, 70 P.2d 335, 335 (1937) ; Schmidt, 874 P.2d at 449. Therefore, the party challenging the validity of a treasurer's deed has the burden of establishing noncompliance. Richardson v. Halbekann, 97 Colo. 175, 178, 48 P.2d 1014, 1015 (1935) ; see Bald Eagle Mining, 165 Colo. at 31, 437 P.2d at 61 (the presumption of regularity is rebuttable); Schmidt, 874 P.2d at 449 (same).
A. Receipt of Notice by Mr. Cordell
¶ 38 From the outset of this case, Mr. Klingsheim has argued that notice was provided in accordance with the statute because the notices were sent by certified mail to the address shown in county records, which was the address to which Mr. Cordell wanted the notices sent, and were received by the person whom Mr. Cordell wanted to receive them. The district court appears to have assumed that notice was not received, as does the majority. In my view, however, Mr. Cordell clearly received notice.
¶ 39 Our cases recognize that a treasurer is entitled to rely on the accuracy of an assessor's records when determining to whom and where to send a notice. See, e.g., Walter, 101 Colo. at 17-19, 70 P.2d at 336-37 ; Schmidt, 874 P.2d at 450-51. It is undisputed that the treasurer properly addressed the notices at issue to the most recent address shown in the assessor's records-the very address to which Mr. Cordell wanted them sent. And it is undisputed that the notices were actually received by a person, Mr. Cordell's *637 mother, whom Mr. Cordell had authorized to receive them. Courts in other jurisdictions, applying statutes similar to section 39-11-128, have held that receipt of notice by a person's agent constitutes actual service on the person. E.g., Wasden v. Foell, 63 Idaho 83, 117 P.2d 465, 466-67 (1941) (receipt of notice of pending issuance of tax deed by owner's tenant, whom owner had authorized to receive his mail, "was equivalent to its actual receipt by" owner); Avery v. Mayo, 161 La. 699, 109 So. 393, 394 (1926) (receipt of notice, sent by registered mail, of tax collector's intention to sell property for delinquent taxes by owner's nephew was receipt by the owner because the nephew had the owner's authority to receive registered mail); Coverston v. Grand Forks Cnty., 74 N.D. 552, 23 N.W.2d 746, 748-49 (1946) (service on owner was effective where wife signed for notice of expiration of redemption period, sent by registered mail, as owner's agent); see also Henrie v. Greenlees, 71 Colo. 528, 530, 208 P. 468, 469 (1922) (receipt of notice of application for tax deed by corporate owner's registered agent and members of board of directors was sufficient notice to the corporation); cf. DeSalvo v. Roussel, 629 So.2d 1366, 1368 (La.Ct.App.1993) (notice of tax sale properly addressed, sent by certified mail, and signed for by the owners' minor son was notice to the owners); S.A.B. Enters., Inc. v. Stewart's Ice Cream Co., 187 A.D.2d 875,590 N.Y.S.2d 568, 569 (1992) (notice of tax sale, which was properly addressed and sent by certified mail, was received by the owner though signed for by the daughter of one of the owner's principals).[3]
¶ 40 This is consistent with Colorado case law, which has recognized, in a variety of contexts, that notice to a person's agent constitutes notice to the person. See, e.g., Stortroen v. Beneficial Fin. Co. of Colo., 736 P.2d 391, 396 (Colo.1987) ; Brown Grain & Livestock, Inc. v. Union Pac. Res. Co., 878 P.2d 157, 158 (Colo.App.1994) ; Strong Bros. Enters., Inc. v. Estate of Strong, 666 P.2d 1109, 1112 (Colo.App.1983) ; see generally Restatement (Second) of Agency § 268 (1958) (notice to an agent is, with exceptions not applicable here, notice to the principal); Restatement (Third) of Agency § 5.02 (2006) (same).
¶ 41 Recognition of service on an agent as service on the principal also comports with due process. E.g., Dusenbery v. United States, 534 U.S. 161, 164-65, 168-70, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (service of notice of property forfeiture proceeding on inmate by certified mail did not violate due process even though return receipt was signed by a corrections officer and the inmate claimed he had never received the notice);[4] Kaplan v. United States, 133 F.3d 469, 475 (7th Cir.1998) (notice to one partner by mail was notice to the other partners; no due process violation); Ottaco, Inc. v. Kalport Dev. Co., 239 Mich.App. 88, 607 N.W.2d 403, 407 (1999) (certified mailing of notice of right to redemption from tax sale to owner's registered agent provided due process).
¶ 42 Thus, I conclude that the treasurer actually served Mr. Cordell. Having done so, the treasurer was not required to make any further efforts to provide notice.
B. Diligent Inquiry
¶ 43 The majority concludes that the treasurer failed his obligation to make "diligent inquiry" merely because he (or his deputy) did not recheck county records for an alternative address. The majority does not say that any such effort would have proved fruitful, but instead concludes that the failure to make that effort necessarily requires voiding the treasurer's deeds. With all due respect, I believe that conclusion is inconsistent with a proper understanding of Colorado precedent regarding the treasurer's duty of inquiry.
¶ 44 Colorado case law is clear that in determining to whom and where to send a *638 notice of application for a treasurer's deed, a treasurer is entitled to rely on county records. E.g., White Cap Mining Co. v. Resurrection Mining Co., 115 Colo. 396, 409-10, 174 P.2d 727, 733 (1946) ; Olson v. Tax Serv. Corp., 102 Colo. 75, 79-80, 76 P.2d 1113, 1115-16 (1938) ; Walter, 101 Colo. at 18, 70 P.2d at 336 ("It is the duty of the county assessor to prepare the tax rolls and give the names and addresses of the owners of property thereon ..., and it would seem that the treasurer is entitled to rely on their being accurate." (citation omitted)); Schmidt, 874 P.2d at 450-52. If notice sent by registered or certified mail is returned as undelivered or unclaimed, the treasurer may have a duty to make further diligent efforts to find a current address.[5] If further inquiry of the county's records would not disclose, to a reasonable observer, a different current address, no further inquiry of the records, nor other further efforts, is required. This principle follows from analysis of the following cases.
¶ 45 In Walter, the treasurer sent notice of the tax sale to the owner by registered mail at the address shown on the assessor's records. The registered mail was returned to the treasurer as "unclaimed." The treasurer "made no further inquiry." 101 Colo. at 16-17, 70 P.2d at 336. The supreme court held that "the treasurer was justified in assuming that the address used was a 'known address' and that he was not required to make further inquiry to ascertain where [the owner] could be reached by mail." Id. at 18, 70 P.2d at 336-37. The owner did not contend that an alternative current address could be found in the assessor's records. Instead, he contended that the treasurer was required to look outside those records. Id. at 17-18, 70 P.2d at 336. Thus, implicit in the court's holding is the notion that further inquiry is not required when the county records do not show a different current address.
¶ 46 To like effect is Olson . In that case, the treasurer, like the treasurer in this case, consulted the assessment rolls and also obtained an abstract from a title company showing the names of persons to whom notice needed to be given. Many of the notices, sent by registered mail, were returned undelivered. 102 Colo. at 79-80, 76 P.2d at 1115-16. The court held that the treasurer was not required to do anything more. Id. at 79-81, 76 P.2d at 1115-16 (and noting that "the treasurer in using due diligence need not do all that a lawyer would do in seeking to locate lost heirs or an absconding debtor as counsel suggests"). Again, there was no indication in that case that rechecking the assessor's records would have revealed a different current address.
¶ 47 In White Cap Mining, the plaintiff, a corporation, was entitled to notice of the application for a treasurer's deed. But because the county treasurer's records did not show any address for the plaintiff or any of its officers, the treasurer provided notice only by publication. 115 Colo. at 409, 174 P.2d at 733. The plaintiff argued that the treasurer was required to check the records of the secretary of state, "the only source from which [an] address was obtainable." Id. at 409-10, 174 P.2d at 733. The court rejected that argument. The court did not suggest that the treasurer was obligated to recheck county records.
¶ 48 In Schmidt, which is apparently the most recent published appellate decision dealing with the diligent inquiry requirement, a division of this court held that the obligation of diligent inquiry has practical limits: the duty extends no further than consultation of county records and that even within that realm, only efforts that would prove "fruitful" are required. See 874 P.2d at 451. The treasurer, like the treasurer in this case, obtained information from both a title insurance company and county records. Based thereon, the treasurer sent a notice of the application for a treasurer's deed to a lienholder by certified mail. The notice was returned marked "Return to Sender, Forwarding Order Expired." Id. at 448-49. In discussing the duty of diligent inquiry (and holding that the treasurer had met that duty), the division held that "if a diligent search of the county records would uncover *639 no alternative address, neither constitutional due process concerns nor statutory requirements compel the county treasurer to follow up on information which she has no reason to believe would result in the discovery of a correct address." Id. at 452. And, any such "reason to believe" must derive "from the information contained within the county records." Id. at 451-52. In rejecting a broader duty imposed by courts in other states, the division observed that the decisions of those courts "provide little guidance as to when the inquiry must cease and little assurance that the efforts required would be fruitful or within the limits of practicality." Id. at 451. It is therefore clear to me that the Schmidt division, in reading prior Colorado precedent, did not view the "diligent inquiry" requirement as obligating a treasurer to make futile efforts to ascertain a person's address, but only such efforts as would, based on the county's records, reveal a different correct address.
¶ 49 This conclusion is also supported by the cases holding that treasurers had not made "diligent inquiry," on which the majority and the Cordells rely.
¶ 50 In Bald Eagle Mining, notices of applications for treasurer's deeds were sent to an owner at an incorrect address shown on the assessor's tax rolls. But the correct address was in both the assessor's tax rolls and the clerk and recorder's records, and the treasurer had recently sent a notice relating to other property to the owner at the correct address. 165 Colo. at 30-31, 437 P.2d at 60-61. The treasurer had not made "diligent inquiry" as required by the statute because "a check of the records in the assessor's office itself or in the clerk and recorder's office would have revealed the correct address . Certainly blind reliance on erroneous assessor's rolls when the correct address was easily available to the treasurer does not satisfy the diligence requirements of the statute, nor does it permit forfeiture of property when the owner of the property does not receive notice of the impending forfeiture because of the lack of diligent inquiry on the part of the treasurer." Id. at 32, 437 P.2d at 61 (emphasis added). Thus, the court analyzed "diligent inquiry" in terms of whether additional consultation of county records would have proved effective in providing notice to the owner.
¶ 51 Similarly, in Siler v. Inv. Sec. Co., 125 Colo. 438, 244 P.2d 877 (1952), the court held that sending a notice of an application for a treasurer's deed to an owner's old address was insufficient under the "diligent inquiry" standard where the assessor's roll showed the owner's "correct" (by which it meant current) address. Id. at 441, 443-44, 244 P.2d at 879-80. The court concluded that "[i]f 'diligent inquiry' had been made, plaintiff unquestionably could have been served with the notice required by statute." Id. at 443-44, 244 P.2d at 880 (emphasis added). Again, the court analyzed the "diligent inquiry" requirement in terms of whether checking the assessor's rolls actually would have revealed the owner's current address.
¶ 52 Last, in Parkison v. Burley, 667 P.2d 780 (Colo.App.1983), the notice was mailed to owners at an address shown in the assessor's records, but returned as undeliverable. Id. at 781-82. The court held that because further inquiry of the county records would have revealed the owners' current address, the treasurer had not made "diligent inquiry." Id. at 782. Though I think Parkison arguably requires more inquiry than that dictated by supreme court precedent, it is nevertheless consistent with the notion that we must analyze diligence not in a vacuum, but in terms of ultimate effectiveness in providing notice.
¶ 53 In sum, Colorado case law measures "diligent inquiry" in terms of whether any inquiry beyond that conducted before mailing a notice would result in finding, based on the county's records, a different address that, to a reasonable observer, would appear current. Though I agree with the majority that "full compliance" with the statute is required, see Siler, 125 Colo. at 444, 244 P.2d at 880, I do not believe such compliance requires futile efforts. It is not enough to say that the treasurer did not recheck county records, we must ask whether doing so would have furthered the obvious goal of the notice statute to provide notice. See Thurman v. Tafoya, 895 P.2d 1050, 1055 (Colo.1995) ("[C]ourts must consider the underlying purpose or policy *640 of the statutory enactments when determining the legislative intent.").
¶ 54 Answering that question here, I conclude that rechecking the county records would not have furthered that goal. Rechecking the records would have shown the Cordells' address for the preceding several years as 705 N. Vine, Farmington, New Mexico 87401. The Cordells contend that because the address 5207 Hubbard Road, Farmington, New Mexico is also shown in the assessor's records, the treasurer was required to send the notice there. But any reasonable observer would have regarded that address as outdated. It had not appeared as current since 2003 as to Tract 1 and since 1999 as to Tract 2. Indeed, as to Tract 2, the assessor's rolls showed an intervening address, P.O. Box 6071, Farmington, New Mexico, which would have appeared as more recent than 5207 Hubbard Road. The rolls also showed other, apparently older addresses. By the Cordells' reasoning, the treasurer was required to send notices to those addresses as well. But they cite no authority, and I am not aware of any, holding that the requirement of diligent inquiry obligates a treasurer to send notice to any apparently superseded address. Cf. Keiser v. Young, 181 A.D.2d 170,585 N.Y.S.2d 880, 881-82 (1992) (where there was evidence that the owner had received mail at the address to which the notice had been sent, and the owner had not notified the county of a different address, the fact that the owner also received mail at another address did not mean the county was required to send notice to the other address). Requiring such efforts would seem particularly pointless where, as in this case, the treasurer had sent notices to, and the owner had received notices at, the address appearing as current, without incident, for several years.[6]
¶ 55 Though the Cordells do not contend on appeal, and did not contend in the district court, that the treasurer was required to resend the notices to the same 705 N. Vine address, I address whether the statute required such action because the district court apparently concluded that it did. I conclude to the contrary because the undisputed facts establish that doing so would have been futile. Mr. Cordell testified that the notices were in fact delivered as he had intended them to be delivered, and that his mail had been so delivered when addressed to 705 N. Vine since the late 1990s. Therefore, I assume (I think reasonably so) that resent notices would have been delivered to Cleo Cordell, and that she would have set aside that mail in her house for Mr. Cordell to pick up, just as she had done with the first notices (and all of Mr. Cordell's other mail). Because Mr. Cordell did not pick up his mail at his mother's house for several months, he would not have learned earlier of the applications had the notices been resent. See Cornelius v. Rosario, 138 Conn.App. 1, 51 A.3d 1144, 1150-51 (2012) (though there must be strict compliance with statutory notice requirements, resending of notices of tax sales was not required, and failure to resend notices did not invalidate tax deeds, where resending would have been futile).
¶ 56 The majority asserts that Colorado case law does not permit, much less require, us to determine whether rechecking the county records would have made a difference in whether the Cordells timely responded to the applications for tax deeds. I disagree. As discussed above, the cases, properly understood, focus on the efficacy of additional efforts; they do not regard additional efforts as an end in and of themselves. Further, there are cases, which the majority does not acknowledge, expressly requiring a showing of prejudice by a party claiming noncompliance with the notice statute.
¶ 57 In Johnson v. Dunkel, 132 Colo. 383, 288 P.2d 343 (1955), a Colorado Supreme Court decision by which we are bound, the court held that a party who claimed lack of compliance with the statutory notice requirements could not seek relief under the statute because that party had actual notice of the *641 application for a treasurer's deed. Id. at 386-87, 288 P.2d at 345. To the same effect is Turkey Creek, LLC v. Rosania, 953 P.2d 1306, 1313-14 (Colo.App.1998), in which the division held that a party who had actual knowledge of an application for a treasurer's deed lacked standing to claim noncompliance with the notice requirements of section 39-11-128(1) because he had "not demonstrated any injury to his right to notice." These cases apply the principle, common in the law, of "no harm, no foul." In this case, there was no harm and, consequently, no foul.
¶ 58 An analysis of this notice issue is not complete without asking whether the constitutional requirement of due process required more of the treasurer than what the treasurer did. I conclude that it did not.
¶ 59 Initially, as discussed above, courts, including the Supreme Court, have recognized that notice to a party's agent comports with due process. But even assuming the obligation of "diligent inquiry" (in this case meaning further efforts to provide notice) is implicated, there was no violation of the right to due process.
¶ 60 In Jones v. Flowers, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), the Court considered whether due process required a government official, who had mailed notices of a right to redemption and of a future tax sale to the property owner, but had received the notices back as "unclaimed," to make additional efforts to notify the owner before selling the property. Though the official had relied on property records, the majority held that further efforts were required. However, the majority did so by noting efforts that, in its view, could have been effective. "[T]he State should have taken additional reasonable steps to notify [the owner], if practicable to do so.... [I]f there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." Id. at 234, 126 S.Ct. 1708.
¶ 61 The majority in Jones determined that the official could have taken measures which would have increased the owner's chances of receiving notice. Specifically, the official could have posted the notice at the property, where the owner lived. Id. at 235, 126 S.Ct. 1708. Or the official could have resent the notices by regular mail: because the notices had been returned as "unclaimed," not requiring a signature would have made it more likely that the notices would be delivered, even if the owner had moved. Id. at 234, 126 S.Ct. 1708.[7] Notably, the Court in Jones rejected the argument that the official was required to search outside the property tax records for a different address. Id. at 235-36, 126 S.Ct. 1708.
¶ 62 In sum, Jones is consistent with the idea that the efficacy of additional efforts matters, even in the due process context. That is no surprise. "Due process does not require the rote performance of futile exercises." Beachum v. Tansy, 903 F.2d 1321, 1330 (10th Cir.1990) ; see also Foster v. Ames, 5 Ariz.App. 1, 422 P.2d 731, 734 (1967) ("We do not believe that due process requires futile things."); Univ. of Colo. v. Silverman, 192 Colo. 75, 80, 555 P.2d 1155, 1159 (1976) (right to due process is not violated if action would be futile).[8]
¶ 63 My analysis of the "diligent inquiry" issue applies with equal force to Mrs. Cordell. It is undisputed that the address at which she had lived for many years, in Moline, Illinois, was not shown in any of the county's records. Thus, any search for a different current address for her in those records would have proved futile.
*642 ¶ 64 I therefore conclude that even if the Cordells are not deemed to have been served with the notices, the treasurer was not required to do anything further before issuing the treasurer's deeds.
C. Separate Notice to Mrs. Cordell
¶ 65 Mrs. Cordell argued in the district court that section 39-11-128 required that she be provided with notice in a piece of mail separate from that sent to her husband. The district court agreed with her. I do not.
¶ 66 The district court did not cite any legal authority for its conclusion. Nor does Mrs. Cordell. I do not see anything in the text of the statute requiring separate notices in these circumstances.
¶ 67 Mr. and Mrs. Cordell were joint owners of Tract 2, were married, and by all objective appearances (based on county records) received mail at the same address.[9] Thus, sending a notice to both of them in one piece of mail was reasonably calculated to apprise both of them of the application for a treasurer's deed. See, e.g., Tax Certificate Invs., Inc. v. Smethers, 714 N.E.2d 131, 133-34 (Ind.1999) (joint notice of petition for tax deed to owners (former husband and wife) who used to live together at the mailing address complied with notice statute and comported with due process); DeSalvo, 629 So.2d at 1368-69 (joint notice of tax sale sent to former husband and wife at address of record for both was sufficient); In re Communipaw Cent. Land Co., 26 N.J.Super. 125, 97 A.2d 176, 180 (Ch. Div.1953) (joint notice of right to redeem sent to co-owners was sufficient); Curtis Bldg. Co. v. Tunstall, 21 Pa.Cmwlth. 81, 343 A.2d 389, 390-91 (1975) (a single notice of tax sale sent to both spouses, but allegedly received by only one spouse, was sufficient); but see Alper v. LaFrancis, 155 So.2d 405, 405-06 (Fla.Dist.Ct.App.1963) (notice of tax deed sale sent jointly to husband and wife was not sufficient; separately mailed notices required).
¶ 68 In any event, Mrs. Cordell does not contend that there were any measures the treasurer reasonably could have taken to discover her current mailing address. It is in fact undisputed that there were no such measures. Therefore, any failure to provide Mrs. Cordell with a separate notice, if in violation of the statute, did not prejudice her, and she is not entitled to relief. See Johnson, 132 Colo. at 386-87, 288 P.2d at 345 ; Turkey Creek, 953 P.2d at 1313-14.[10]
III. Conclusion
¶ 69 For the foregoing reasons, I would reverse the district court's judgment and order entry of judgment in defendants' favor.

Mr. Cordell testified that since this incident, his mother has put his mail in a specific place, whereas before it could be in several locations in the house.

The Cordells based their claims on subsection (1)(b), and the district court relied on that provision. The majority instead relies on subsection (1)(a). I do not think it matters in this case whether subsection (1)(a) or subsection (1)(b), or both, applies.

I also observe that the certified mail receipts had boxes to be checked by anyone signing for receipt of the mail as an "agent." As this is a feature of certified mail, and the General Assembly has expressly provided for notice by certified mail, the General Assembly has approved service on an agent by certified mail.

In Jones v. Flowers, 547 U.S. 220, 238, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), discussed below, the Court reaffirmed its holding in Dusenbery .

For purposes of this discussion, I assume the situation in this case (where the return receipt shows the mail was signed for by someone other than the addressee) is analogous to a return of notice as undeliverable or unclaimed.

In speaking of a "correct" address for notices, the cases logically refer to a current address. See, e.g., Bald Eagle Mining & Refin. Co. v. Brunton, 165 Colo. 28, 31-32, 437 P.2d 59, 60-61 (1968) ; Siler v. Inv. Sec. Co., 125 Colo. 438, 441-42, 244 P.2d 877, 879 (1952) ; Schmidt v. Langel, 874 P.2d 447, 451-52 (Colo.App.1994) ; cf. § 39-11-101, C.R.S.2014 (notice of a tax delinquency must be sent to the "last-known address").

Neither of these alternatives would, if used in this case, have made it more likely that the Cordells would have learned of the notices earlier. Neither of them lived at the subject property. And, as discussed above, resending the notices to 705 N. Vine, even by regular mail, merely would have resulted in additional pieces of mail sitting in Cleo Cordell's house waiting to be picked up.

Nor does due process "require that a property owner receive actual notice before the government may take his property." Jones, 547 U.S. at 226, 126 S.Ct. 1708. Rather, the government need only provide " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " Id. (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ).

Mr. and Mrs. Cordell were still married at the time of the issuance of the treasurer's deeds.

And, in any event, because it was not possible for the treasurer to learn Mrs. Cordell's current mailing address by checking any county records, notice to her by publication was sufficient.